W. J. JONES & SON, INC., a corporation,
Appellants,

v.

CALMAR STEAMSHIP CORPORATION
et al., Appellees.

CALMAR STEAMSHIP CORPORATION
et al., Appellants,

v.

PITTSTON STEVEDORING CORPORA-
TION, Appellee.

No. 16685.

United States Court of Appeals
Ninth Circuit.

Nov. 3, 1960.

**500**

Wood, Matthiessen, Wood & Tatum, Erskine B. Wood, John R. Brooke, Portland, Or., for Calmar Steamship Corp. et al.

Krause, Lindsay & Nahstoll, Gunther F. Krause, Dennis Lindsay, Carl R. Neil, Portland, Or., for W. J. Jones & Son, Inc.

Koerner, Young, McColloch & Dezendorf, Wayne Hilliard, James H. Clarke, Portland, Or., for Pittston Stevedoring Corp.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This case arose as an action for indemnity brought by a ship operator and his insurers against a west coast loading stevedore to recover settlement moneys paid to an injured employee of an east coast discharging stevedore. The sums were paid to settle a claim of liability due to injury arising from unseaworthy condition of the vessel. Indemnity is here sought under Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133, upon the ground that the unseaworthy condition was brought about by the negligent manner in which the loading stevedore had stowed the ship's cargo. From judgment of the District Court in favor of the libelants the libelee has taken this appeal.

Appellee Calmar Steamship Corporation was operator of the vessel Alamar. Appellant Jones was a stevedore firm which, in June, 1954, loaded lumber aboard the vessel at Newport, Oregon. Pittston Stevedoring Corporation (impleaded in the case by Jones' petition under fifty-sixth Admiralty Rule, 28 U.S.C. A.) was the stevedore which later, on July 6, 1954, discharged the lumber from the vessel at Brooklyn. Edward Oprosko was a longshoreman employed by Pittston. He was injured by falling lumber in the course of discharging the cargo. Calmar was sued by Oprosko in New York and settled the case before trial for $117,-500. It was reimbursed by its insurance underwriters and it is to recover the amount of this settlement that this suit is brought.

The principal dispute presented by the case is as to whether Calmar, Jones or Pittston is responsible for the unseaworthy condition which caused Oprosko's injury. The principal issue upon this appeal is whether the District Court was clearly erroneous in its determination that the conditions causing injury were created by Jones. We have concluded that it was not and that judgment should be affirmed.

The injury occurred in the No. 2 lower hold of the Alamar. This hold had been loaded with lumber in Oregon by first laying floor stowage across the entire floor of the hold, building it up from the bottom toward the underside of the 'tween deck beams. After completing this floor stowage, lumber was stowed in the wings in tiers, approximately six feet high, rising from the floor to the beams overhead. It was in the course of unloading the starboard wing stowage that Oprosko's injury occurred. One or more of the tiers toppled and fell on him.

In building wing tiers, it is customary that cross-pieces of lath, known as "stickers," be inserted at intervals as the tier rises from the floor in order to bind and steady the structure. The District Court found:

"Jones stowed the wing tiers of lumber on the starboard side of the No. 2 lower hold, and particularly the tier or tiers from which the lumber fell on Oprosko, without using lath or stickers. This was improper stowage, as it rendered the tiers

shaky and wobbly and likely to fall over or collapse. Jones failed to use due care, and was negligent, in this respect."

This finding is amply supported by the record.

The court further found:

"The improper stowage of the wing tiers of lumber in No. 2 lower hold, performed by Jones, without lath or stickers, thereby rendering the tiers shaky and wobbly, was the sole, active, and primary conduct causing the lumber to fall or collapse upon Oprosko, and was the sole proximate cause of the accident and resulting injuries to Oprosko.

"The falling or collapsing of the lumber upon an unloading longshoreman was a natural and foreseeable consequence of the improper stowage of the lumber as aforesaid."

There is ample evidence to the effect that the tiers fell because of the lack of stickers. There can be no doubt that this lack of stickers created an unseaworthy condition.

There is no doubt that Oprosko and his fellow longshoremen had knowledge of the shaky condition of the tiers as they commenced to work back into the wings from the square of the hatch. The hatch foreman had remarked on the condition to the ship's mate, advising him that they were faced with "bum stowage." The mate had in effect told the foreman to do the best he could.

Jones contends that under Bruszewski v. Isthmian Steamship Company, 3 Cir., 1947, 163 F.2d 720, this destroyed any warranty of seaworthiness since the stevedore had knowledge of the unseaworthy condition and had assumed responsibility for correcting it.

This same contention under similar circumstances was made to this court in Metropolitan Stevedore Company v. Dampskisaktieselskabet International, 9 Cir., 1960, 274 F.2d 875, and was rejected in the following language (at page 877):

"While the bales of rubber had to be removed in order to repair the condition, no change in mode of operation was commenced which would indicate that the removal of bales by Metropolitan was other than a continuation of the unloading operation."

We conclude that Bruszewski does not apply under the facts of this case and that the warranty of seaworthiness continued unimpaired.

Jones' principal contention throughout the case has been that Pittston and Calmar both had knowledge of the lack of stickers and negligently failed to take effective action to protect against it; that this negligence constituted an intervening cause freeing Jones from responsibility for the injury.

The District Court disposed of this contention by finding upon the evidence that Pittston was not negligent. In proceeding to the question whether this finding of the District Court was clearly erroneous, we do so without deciding whether the tort concept of intervening negligence is available as a defense in an action for breach of the stevedore's warranty that loading and stowing will be done in a workmanlike manner.

The Pittston longshoremen did attempt to remedy the situation by "chocking" the shaky tiers: that is, by driving wedges between the tops of the tiers and the bottom of the overhead beam. The injury had resulted notwithstanding this precaution. After the accident had occurred, the shaky tiers were, by order of Pittston's superintendent, deliberately toppled to the floor to eliminate any further possibility of injury. Jones contends that Pittston's reliance upon chocking instead of pulling the tiers over in the first instance was negligence and operated as an intervening cause. Testimony was divided as to what would have constituted good stevedoring practice under the circumstances. The court found that chocking "was good stevedoring practice," and further found:

"Pittston, in wedging or chocking the tiers as a precaution against their falling over or collapsing, acted in the exercise of reasonable prudence and judgment. Pittston was not negligent in failing to pull the tiers over before attempting to discharge the lumber."

There is testimony to support these findings and they cannot be held to be clearly erroneous.

Jones' theory of the case is that the cargo had been unsettled by the long voyage and rough weather; that the ship was listing at the time of the accident and that this contributed to the shaky condition of the tiers; that Pittston's longshoremen, to expedite the unloading operation, had lengthened and weakened the tiers by first removing floor stowage in front of them, which stowage was not customarily strengthened by stickers. The court found against Jones on each factual contention and the record provides support for all such findings.

As to Calmar, Jones contends that it was guilty of negligence in that its mate failed to take effective action once he had been advised of the unseaworthy condition. Specifically, it is suggested that when the hatch foreman advised of this condition the mate should have communicated this information to Pittston's superintendent. But this is to recognize that the responsibility for taking preventive action remained with Pittston. The mate would have acted as no more than a go-between from foreman to superintendent, injecting himself into Pittston's chain of command. The record establishes that the foreman himself could as easily have acted in this capacity.

The District Court found:

"Calmar was not guilty of any conduct which was a proximate or contributing cause of the accident and injuries to Oprosko.

"Calmar did nothing in any way to hinder, delay, prevent or excuse Jones from properly performing its contractual obligation to load and stow the vessel in a safe and proper manner."

We conclude that in all respects the court's findings have ample evidentiary support and may not be held clearly erroneous. The judgment necessarily follows from the findings.

Calmar has taken a protective cross-appeal against Pittston, asserting error of the District Court in holding Pittston free from negligence.

Upon both the appeal of Jones and the cross-appeal of Calmar, judgment is affirmed.