**WEST COAST TERMINALS CO. OF CALIFORNIA, Appellant,**

v.

**LUCKENBACH STEAMSHIP COMPANY, Inc., Appellee.**

No. 19698.

United States Court of Appeals
Ninth Circuit.

Aug. 4, 1965.

---

Stanley J. Cook, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for appellant.

Jay T. Cooper, Eric J. Schmidt, Dorr, Cooper & Hays, San Francisco, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and MATHES, Senior District Judge.

MATHES, Senior District Judge:

Appellant, a stevedoring company, prosecutes this appeal from a judgment

in favor of appellee shipowner for damages for breach of an express contract of indemnity, arising out of a claim for personal injuries suffered by one of appellee's seamen employees.

The facts, as disclosed by the admissions and stipulations of the parties and the findings of the District Court, are briefly as follows. On December 16, 1955, one of appellee's seamen, Jose Barreto, was injured aboard appellee's vessel, the "HARRY LUCKENBACH", at Oakland, California, while appellant stevedore company was engaged in discharging cargo from that vessel under a stevedoring contract with appellee, which provided, *inter alia:*

> "Contractor warrants that all gear and equipment to be furnished by it hereunder will be in good condition and safe for use, and that its services will be performed in an efficient, workmanlike and careful manner, with due regard for safety to life and property."

[Cf.: Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); and see Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 336 F.2d 124 (9th Cir. 1964), cert. denied, 379 U.S. 973, 85 S.Ct. 668, 13 L.Ed.2d 565 (1965).]

The material circumstances surrounding seaman Barreto's injury are these. The main deck hatches of the "HARRY LUCKENBACH", aboard which Barreto was employed, were covered with steel pontoons—hollow and rectangular, approximately twenty feet long, five feet wide, ten inches deep, and weighing about 1,000 pounds each. Prior to Barreto's injury, appellant's stevedores had removed, with the ship's winch and boom, two such pontoons from the #4 hatch, stacking them one on top of the other in a fore-and-aft direction near the hatch coaming on the off-shore (port) side of the main deck. To prevent the upper pontoon from sliding on the lower one, pieces of wooden dunnage termed "stickers" were placed between the stacked pontoons in a crosswise or thwartship direction near each end of the pontoons, with the forward-end "sticker" protruding several inches out from the inboard side of the stack.

The injury occurred when seaman Barreto, doing ship's maintenance, was ordered in the course of this employment to obtain a shackle from a locker forward of the two stacked pontoons just described. A natural and direct route for Barreto to take on this mission was onto and across the top of these pontoons. Following this route, Barreto attempted to return to the deck by stepping down onto the protruding forward-end "sticker", with the result that under his weight the "sticker", an inch-thick board, gave way at a knot and he fell to the deck, sustaining a comminuted fracture of the right thigh.

Seaman Barreto thereafter sued appellee shipowner in the Southern District of New York for damages for his personal injuries, alleging as proximate cause negligence under the Jones Act and unseaworthiness under general maritime law. After investigating Barreto's claim and taking depositions, appellee shipowner tendered the defense of this New York action to appellant stevedore company, who refused it. Appellee then settled the New York action for $40,000.00, and in 1960 brought this suit in admiralty against appellant seeking indemnification for the $40,000.00 paid Barreto, plus some $13,000.00 for defense expenses in connection with the seaman's action.

The libel in personam at bar alleges the seaman's injury, his suit, the tender of defense to appellant, appellant's refusal of this tender, the ensuing $40,000.00 settlement and the shipowner's costs of defense. The libel further alleges that the $40,000.00 settlement was reasonably and necessarily made, and that the claimed expenses of defense were reasonably and necessarily incurred. Appellant answered the libel denying that the settlement was reasonable, and denying also that any breach of the stevedoring con-

tract was a proximate cause of the seaman's injury.

Inasmuch as the shipowner-indemnitee settled the seaman's action after the admitted refusal of the stevedore-indemnitor to assume the tendered defense of that action, only two issues remained for adjudication by the District Court here: (1) was the settlement made reasonably and in good faith; that is to say, was there reasonable and good-faith belief in liability of the shipowner and, if so, was the amount paid in settlement reasonable; and (2) was there a breach of the indemnity contract by the stevedore which proximately caused the seaman's injury; that is to say, did the stevedore breach its express warranty of workmanlike service, while the shipowner fully performed its obligations under the contract. [See: Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Damanti v. A/S Inger, 314 F.2d 395, 397 (2nd Cir. 1963), cert. denied Daniels & Kennedy, Inc. v. A/S Inger, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963); California Stevedore & Ballast Co. v. Pan-Atlantic S. S. Corp., 291 F.2d 252, 254-255 (9th Cir. 1961).]

As to the first of these two issues—the reasonableness and good faith of the settlement—it was the finding of the District Court that:

> "The settlement by Luckenbach with Barreto was made in good faith, uninfluenced by any element of connivance, collusion, or fraud. There then existed a reasonable possibility that following a trial of the issues it would be found and adjudged that the vessel was unseaworthy and that such unseaworthiness was the proximate cause of the injury, that Barreto was not contributorily negligent, or, if so, that such contributory negligence was not a substantial comparative contributing cause of the injury, and that just compensation for the legally cognizable damages suffered by Barreto would be substantially in excess of $40,000.-00."

■ Appellant asserts that the District Court "erred in finding and concluding that Luckenbach's settlement with Barreto was reasonable", but there is little to be said in support of this contention. Since defense of the seaman's action was tendered to and rejected by the stevedore, and the action was thereafter settled by the shipowner in good faith, the latter need not, in this suit to recover indemnity under the stevedore's contract, prove that the shipowner was legally liable to the seaman for the amount paid in settlement. [See: American Export Lines v. Norfolk Shipbuilding etc. Corp., 336 F.2d 525 (4th Cir. 1964); Damanti v. A/S Inger, supra, 314 F.2d at 397.] It is enough if the proof shows existence of a reasonable and good-faith belief in liability of the shipowner, and that the settlement was made in good faith and for a reasonable amount under the circumstances. [California Stevedore & Ballast Co. v. Pan-Atlantic S. S. Corp., supra, 291 F.2d at 254-255.]

■ As to this issue of the potential liability of the shipowner, appellant urges that evidence of Barreto's poor eyesight establishes contributory negligence on the part of the seaman. However, the evidence as to the facts surrounding the accident clearly shows that Barreto's poor eyesight did not contribute as a proximate cause of his fall, admittedly the direct result of the giving way of the wooden "sticker". [Cf. Nicroli v. Den Norske Afrika-og Australielinie, 332 F.2d 651 (2nd Cir. 1964).] Moreover, even if it be assumed that the seaman's lack of care proximately contributed to his injury, the rule stated in California Stevedore & Ballast Co. v. Pan-Atlantic S. S. Corp., supra, is equally applicable here:

> "It is * * * established that the injury to [seaman] Sannella may have been caused in part * * * by the unseaworthiness of appellee's ship. Appellee has shown its potential liability." [291 F.2d at 254.]

■ Furthermore, the admitted facts sustain the District Court's conclusion

that the amount of the settlement was reasonable under all the circumstances shown by the evidence.

■ Turning now to the second issue —the liability of the stevedoring company under the indemnity contract—the District Court found that:

> "The conditions of the vessel upon which Barreto relied as constituting unseaworthiness were created solely by the activities of the stevedore, West Coast, and Luckenbach did not actively participate in nor contribute to the creation or maintenance of such conditions."

These findings are fully supported by the evidence. [See, W. J. Jones & Son, Inc. v. Calmar S. S. Corp., 284 F.2d 499 (9th Cir. 1960); cf. Amerocean S. S. Co. v. Copp, 245 F.2d 291 (9th Cir. 1957); see also: Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Pacific Far East Lines v. Jones Stevedoring Co., 346 F.2d 642 (9th Cir. 1965).]

■ Appellant asserts generally that the District Court erred "in failing and refusing to make specific or adequate findings of all the material facts". The gist of this complaint seems to arise from the circumstance that the facts, as expressly found in the "Findings of Fact, Conclusions of Law, Opinion and Decision", do not embrace certain facts which were stipulated to by the parties, and others which were admitted either in the pleadings or in response to requests for admissions, or in the "Pre-Trial Order".

■ We may concede that it would be better judicial "housekeeping" in every case to have all material facts found as a predicate for the conclusions of law and judgment gathered together in a single document, but that is far from saying failure to do so is reversible error.

The relevant issues were fully and fairly tried, and correctly decided.

Affirmed.