374 F.2d 983
 Anna JENNINGS, Administratrix of the Estate of Stewart Earl
Jennings, deceased, to her own use and to the use of
Government Employees Insurance Company, Subrogee, and
Government Employees Insurance Company, a body corporate, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 10635.
 United States Court of Appeals Fourth Circuit.
 Argued Dec. 6, 1966.
Decided March 2, 1967.
 
 Frederick J. Green, Jr., Baltimore, Md. (Edward C. Bell, Hyattsvill, Md., and Lord, Whip, Coughlan & Green, Baltimore, Md., on brief), for appellants.
 John W. Bassett, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., David L. Rose and Edward Berlin, Attys., Dept. of Justice, and Thomas J. Kenney, U.S. Atty., on brief), for appellee.
 Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.
 SOBELOFF, Circuit Judge:
 
 
 1
 For the third time we have occasion to consider legal questions arising out of a collision between automobiles in Prince George's County, Maryland, on the Suitland Parkway, a highway maintained by the United States. The earlier appeals concerned the issue of negligence, while the present appeal poses the purely legal question of the obligation of the United States as indemnitor to reimburse an insurer for monies paid in settlement of personal injury actions generated by the accident. The District Court held in favor of the United States, finding no duty of indemnification.[1] We affirm.
 
 
 2
 On the morning of January 23, 1956, as Stewart E. Jennings, a civilian employee of the United States government, was driving along the Parkway with his brother, his vehicle skidded on a patch of ice, went out of control and collided with an automobile approaching in the opposite lane. Jennings was killed and his brother and the three occupants of the other car were injured. Suits were brought in the Maryland state courts against Jennings' widow, as administratrix, to recover damages for personal injuries sustained by the occupants of the second automobile. Defense of these actions was assumed by Jennings' insurance carrier, 'Government Employees Insurance Company' (GEICO). Shortly before the trials, the plaintiffs offered to settle their claims for an amount within Jennings' policy limits. The offer was not acted on immediately but, in the course of the trial, GEICO became convinced that Jennings would be found liable if the case reached the jury, and it therefore accepted the offer. The United States was not notified of the pendency of these actions, the settlement offer, or the settlement itself, although the release executed by the plaintiffs designated the United States as one of the parties released from liability.
 
 
 3
 While this litigation was running its course, Mrs. Jennings filed an action in the United States District Court for the District of Maryland under the provisions of the Federal Tort Claims Act to recover damages from the United States for the death of her husband. That case was tried before Judge Watkins, who returned a verdict for Mrs. Jennings. After the two appeals to this court, the judgment was affirmed on the ground that the United States had negligently constructed and maintained the Parkway so as to permit water to accumulate and freeze.[2] An essential element of this judgment was the exoneration of Jennings from any contributory negligence.[3]
 
 
 4
 The present action, in which GEICO seeks, as subrogee, indemnification from the United States for the sum GEICO paid in settlement of the suits against Jennings' estate, was tried before Judge Northrop. GEICO stipulated to the binding effect of Judge Watkins' finding that Jennings was free from contributory negligence, while the United States conceded its own negligence, as found by Judge Watkins, and that the amount of the settlement was reasonable. Judge Northrop held that a settling indemnitee who fails to notify the indemnitor of the pendency of the litigation and of the settlement negotiations may recover only upon a showing that he was actually liable to the person with whom he settled. Giving effect to GEICO's stipulation, the Judge held that Jennings was not legally responsible for the accident and accordingly entered judgment for the United States.
 
 
 5
 The narrow issue which the parties have deliberately framed on this appeal is the effect of GEICO's failure to apprise the United States of the pendency of the actions against Jennings' estate. The parties agree that this is not an absolute bar to GEICO's right to indemnity. The government insists, however, that failure to give notice imposes on the indemnitee the additional burden of proving that there was actual liability to the person with whom settlement was made. It reasons that since the right of indemnity stems from an underlying liability of the indemnitee to a third party, the indemnitor should at some point have the opportunity to negative that liability. Since it was not notified of the earlier actions, and could not therefore participate in those proceedings, the government contends that it should be afforded this opportunity in the present action. While the United States does not dispute that a knowing failure to participate in the initial suits would have bound it to a reasonable settlement, it argues that lack of notice puts the indemnitee to his proof of actual liability in the present action.
 
 
 6
 GEICO's position is that the only effect of its failure to give notice is to afford the United States the opportunity in the present indemnity suit to contest the reasonableness of the settlement. If the insurance company's action in settling and the amount of the settlement were reasonable, the United States, GEICO contends, has suffered no prejudice. Since the United States has conceded that the settlement was reasonable, GEICO would have us reverse the District Court on its showing that there was a strong probability that Jennings would have been held liable by the jury.
 
 
 7
 The concept that notice plus an opportunity to defend render binding on an indemnitor the judgment in a case in which he did not participate springs from notions of res judicata. The reasoning is that where an indemnitor is notified and con take part in-- indeed may control-- the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court. Lack of notice, however, destroys the consensual element, vitiates the binding effect of the judgment, and entitles the indemnitor to be heard on the issue of the indemnitee's liability. The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements.
 
 
 8
 There is no more reason to dispense with the requirement of notice to the indemnitor where the suit against the indemnitee is terminated by settlement than where it is allowed to go to judgment. On the score of notice, the two cases stand alike. Indeed, if the reasonabliness of the indemnitee's conduct be the touchstone, it should govern all indemnity actions, if the original suit went to judgment no less than if it was settled. Yet it would be repugnant to the sense of justice if an indemnitor could be bound by a judgment after trial in a proceeding to which he was not a party and of which he had no notice. There is no authority for binding him in such circumstances and GEICO does not contend that if the case against Jennings had resulted in a judgment against him, it would be entitled to indemnity on the ground that it acted in good faith. GEICO's argument is grounded on the proposition that there was a strong probability that the jury would have found Jennings liable. Yet it is common knowledge that juries often return unanticipated verdicts which are nevertheless not subject to vacation by the trial court or the appellate court. Despite GEICO's reasonableness in settling, the United States might not unreasonably have preferred that the case be submitted to the jury, a course which might have avoided all liability.
 
 
 9
 The rule we adopt in no way discourages settlements. It only recognizes the unquestionable duty to serve notice on the indemnitor. If the indemnitor then elects to participate in the action and rejects settlement, there is no prejudice to the indemnitee, who can recover all money paid under compulsion of a judgment entered against him.[4]
 
 
 10
 Although there is a dearth of Maryland cases discussing this issue, the vitality of Baltimore & Ohio R.R. v. Howard County Comm'rs, 111 Md. 176, 73 A. 656, 40 L.R.A.N.S., 1172 (1909), continues undiminished to this day.[5] There a judgment was recovered against the indemnitee, who had failed to apprise the indemnitor of the pendency of the litigation. In the subsequent indemnity action, the court held that the earlier judgment was not binding on the indemnitor and that to prevail the indemnitee had 'the burden of again litigating the matter and establishing the actionable facts,' 111 Md. at 187, 73 A. at 659, including those necessary to establish the indemnitee's liability to the plaintiff in the prior action as well as those giving rise to the indemnity relationship itself.
 
 
 11
 GEICO relies on several cases containing language to the effect that the indemnitee's burden is satisfied if he justifies his settlement as prudent.[6] These cases are unpersuasive, however, because, as GEICO itself recognizes, in each the indemnitor had received notice of the earlier suit. While it is true that none of these cases gave any indication that lack of notice would have altered the result, courts are wont to restrict their opinions to the issues raised. Moreover, failure to mention notice is as consistent with an inference that notice was assumed to be so fundamental as to warrant no discussion as with GEICO's theory that it was deemed irrelevant when a reasonable settlement has been reached.
 
 
 12
 GEICO also draws attention to several cases elaborating a standard of 'actual liability,' a test that it argues was considered synonymous with probable liability at the date of the settlement. While in two of the cited cases there appears to have been no notice to the indemnitor, as we read them neither supports GEICO's position. In Popkin Bros. v. Volk's Tire Co., 20 N.J.Misc. 1, 23 A.2d 162 (1941), both parties were negligent and the primary issue was the existence of a right to indemnity. After holding that the indemnitee was not in pari delicto with the indemnitor,[7] the court indicated that the indemnitee's voluntary settlement of the first suit did not preclude recovery. The court stated that it was sufficient that he was 'legally liable and could have been compelled to satisfy the claim.' 20 N.J.Misc. at 5, 23 A.2d at 164. In Frank Martz Xoach Co. v. Hudson Bus Transportation Co., 23 N.J.Misc. 342, 44 A.2d 488 (1945), the court described the effect of a voluntary settlement in the following terms:
 
 
 13
 Voluntary payment merely varies the degree of proof needed to establish the liability of the indemnitor by casting upon the indemnitee the burden of proving (1) that he was liable; (2) that the settlement was reasonable; and (3) that his liability was of such a character that, in spite of it, he may recover over against the defendant. 23 N.J.Misc. at 349, 44 A.2d at 491.
 
 
 14
 The language in both opinions reinforces, rather than weakens, the view we think the more reasonable, namely that actual legal liability and not merely probable liability must be proved in the indemnity action where the indemnitor has had no notice. There is no basis for an inference that probable liability would satisfy the 'compulsion' envisioned by Popkin Bros. or the first requisite in Frank Martz, set out above.
 
 
 15
 Since GEICO stipulated (in consideration of certain other stipulations by the United States) that Jennings was free from contributory negligence and therefore not responsible for the accident, we conclude that the District Court correctly gave judgment for the United States.
 
 
 16
 Affirmed.
 
 
 
 [1]
 251 F.Supp. 730 (D.Md. March 10, 1966)
 
 
 [2]
 The District Court initially held that the failure of the United States to discover or, after discovery, to remedy the icy condition of the Parkway constituted negligence as a matter of law and was a proximate cause of the accident. 178 F.Supp. 516, 525-526 (D.Md.1959). On appeal, we vacated the judgment on the ground that the precautions taken by the United States to maintain the Parkway in a safe condition satisfied its duty under Maryland law. We indicated, however, that there was evidence of faulty design and construction, impairing the drainage of water away from the roadway, and remanded the case for additional findings. 291 F.2d 880, 886-887 (4th Cir. 1961). The District Court made further findings and reinstated its earlier judgment. It found that
 'Suitland Parkway, at the time in question, was defective, both in design and constrution, and as so constructed and maintained constituted a nuisance; that reasonable care to abate such nuisance was not exercised * * * after both actual and constructive notice; that such defective condition was the effective, or at least an effective, cause of the injury * * *' 207 F.Supp. 143, 144 (D.Md.1962).
 We affirmed per curiam, 318 F.2d 718 (4th Cir. 1963).
 The District Court's exoneration of Jennings from any contributory negligence, 178 F.Supp. at 529, was affirmed by us in the first appeal, 291 F.2d at 887, and the issue was not raised thereafter.
 
 
 [3]
 Under the Tort Claims Act the United States can be held liable only if a private person in the same circumstances would be liable under the law of the place where the accident occurred, 28 U.S.C.A. 1346(b), and Maryland, the place of the accident, follows the common law rule that contributory negligence of the plaintiff's intestate bars recovery. Baltimore & Ohio R.R. v. State, 133 Md. 219, 104 A. 465 (1918)
 
 
 [4]
 The modern procedural device of impleader enables the indemnitee to make the indemnitor a party to the original action and thus avoid the inconvenience and expense of instituting a separate indemnity action. See e.g., Fed.R.Civ.P. 14, discussed in 3 Moore, Federal Practice ch. 14(2d ed. 1964)
 
 
 [5]
 The law of the state in which the accident occurred, here Maryland, controls under the Federal Tort Claims Act. See note 3 supra
 
 
 [6]
 E.g., West Coast Terminals Co. of California v. Luckenbach S.S. Co., 349 F.2d 568 (9th Cir. 1965); Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 320 F.2d 685 (1963); Damanti v. A/S Inger, 314 F.2d 395 (2d Cir. 1963), affirming 153 F.Supp. 600 (E.D.N.Y. 1957); Paliaga v. Luckenbach S.S. Co., 301 F.2d 403 (2d Cir. 1962); Chicago, Rock Island & Pacific Ry. v. United States, 220 F.2d 939 (7th Cir. 1955); Thermopolis Northwest Electric Co. v. Ireland, 119 F.2d 409 (10th Cir. 1941). See also American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525 (4th Cir. 1964)
 
 
 [7]
 A right to indemnity is commonly recognized where, although both parties are negligent, the negligence of the indemnitee is considered not as serious as that of the indemnitor; for example, where the indemnitee's negligence is based upon a failure to inspect and thereby discover a defect in an article manufactured by the indemnitor. See 3 Moore, Federal Practice P14.11 (2d ed. 1964)