**HARTFORD ACCIDENT AND IN-
DEMNITY COMPANY, Plaintiff,**

v.

**H. P. WILLIAMS, d/b/a Williams Ready
Mix Concrete Company, Cherry Con-
struction Company, Incorporated and
Roan Motor Inns, Inc., Defendants.**

**Civ. A. No. 66–C–63–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Oct. 10, 1968.

Eggleston, Holton, Butler & Glenn, by Michael K. Smeltzer, Roanoke, Va., for plaintiff.

Stone, Joyce, Worthy & Monday, by David B. Worthy, Martinsville, Va., for defendant H. P. Williams.

Arthur E. Smith, Roanoke, Va., for defendant Cherry Const. Co.

Gentry, Locke, Rakes & Moore, by John H. Locke, Roanoke, Va., for defendant Roan Motor Inns, Inc.

## ORDER AND MEMORANDUM OPINION

OREN R. LEWIS, District Judge Designate.

The Court is of the opinion that the defendants' motions for judgment notwithstanding the verdict or, in the alternative, motions for a new trial ought to be denied, and

It is so ordered.

Hartford Accident and Indemnity Company, the subrogee of Appalachian Power Company, brought this suit against Roan Motor Inns, Inc., the land owner, Cherry Construction Company, Incorporated, the general contractor, and H. P. Williams, doing business as Williams Ready Mix Concrete Company, one of Cherry's subcontractors, to recoup the money, including interest, attorney fees and expenses, it had paid to Chester H. Buffkin and Bela Galo, two of Williams' employees, for injuries sustained by them when the crane bucket they were then using in pouring concrete came in contact with Appalachian's overhead high tension wires.

Hartford's claim for indemnity was grounded, and submitted to the jury, on the "active-passive" theory of indemnification as set forth in the Second Circuit Court of Appeals case of Banks v. Central Hudson Gas & Electric Corporation, 224 F.2d 631 (1955).

■ The jury returned separate verdicts against the defendants—each was found to be primarily responsible for Buffkin's and Galo's injuries—Appalachian's negligence, if any, was found to be passive. There was ample evidence to support the jury's verdicts.

Roan knew that the high tension wires were on the easement on which it built its motel. It knew or should have known that the workmen working on the top of its motel would come in close proximity with these wires. It made no arrangements to de-energize or to temporarily remove these lines from the easement during the building operation. Neither did it warn anyone of the possible danger that would result if one came too close to these wires.

Cherry, the general contractor, knew of the existence of the high tension wires and their proximity to the crane that was being used by Williams in pouring concrete. It made no arrangements to de-energize or to temporarily remove the wires; neither did it warn the crane operator or Williams' workmen of the inherent danger of coming in contact with

or in close proximity to these overhead high tension wires.

Williams' crane operator, although he had been warned by a representative of Appalachian that he was swinging perilously close to the overhead wires, continued to so do, resulting in the contact or near contact which caused the injuries to Buffkin and Galo.

Appalachian's overhead wires were within the easement where they had a legal right to be. They were some forty feet above ground level and open and obvious to one and all. Appalachian had not been requested by anyone to de-energize these lines during any phase of the building operation. Appalachian and Roan discussed relocating the easement and power line to a portion of the Roan land that did not encompass the proposed building site. This was not accomplished because Appalachian and Roan could not agree on who was to pay the cost of relocation—estimated to be some $3,000.00.

The Court is of the opinion that Cherry's cross-claim against Williams ought to be denied, and

It is so ordered.

■■ Cherry had no written contract with Williams. Their oral agreement obligated Williams to furnish concrete at the construction site at a certain price per cubic yard. Active negligence on the part of both—which the jury found—precludes recovery by Cherry from Williams. Recovery amongst joint tortfeasors, absent contract, is limited to contribution. See § 8–627, Virginia Code.

The Court is of the opinion that Roan cannot collect on its cross-claim against Cherry upon the theory it advances; therefore its cross-claim will be denied, and

It is so ordered.

■■ Roan had a written contract of indemnity with Cherry covering the losses here sustained. He has expressly waived that agreement. He has done so because Cherry is allegedly insolvent.

He now seeks to hold Cherry liable for breach of an alleged implied contract of indemnity thereby circumventing the exclusion set forth in his written contract of indemnity.

Without ruling whether Roan can waive his rights under his written indemnity agreement with Cherry and substitute in place thereof an implied contract of indemnity, Roan cannot recover here because he too has been found to be primarily responsible along with Cherry and Williams for the losses sustained. Recovery amongst joint tortfeasors, absent contract, is limited to contribution. See § 8–627.

The Court is of the opinion that Williams' third party claim against Pennsylvania National Mutual Casualty Company ought to be granted, and

It is so ordered.

Pennsylvania was the insurer on Williams' workmen's compensation and employer liability policy. Coverage A of the policy deals with workmen's compensation benefits and is not applicable to this claim. Coverage B is the applicable portion of the policy. It obligates Pennsylvania to Williams as follows:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident * * * sustained by any employee of the insured arising out of and in the course of his employment by the insured. * * * *"

Paragraph 9 under Conditions reads as follows:

> "The words 'damages because of bodily injury by accident * * *' in coverage B include * * * damages for which the insured is liable by reason of suits or claims brought against the insured by others to recover the damages obtained from such others because of such bodily injury sustained by employees of the insured arising out of and in the course of their employment."

This language binds Pennsylvania to pay the judgment here rendered in favor of the plaintiff against Williams.

See Cardinal v. State of New York, 304 N.Y. 400, 107 N.E.2d 569 (1952), and more particularly Leonardi v. Standard Accident Insurance Company, 212 F.2d 887 (2nd Cir. 1954).

Pennsylvania's contention that Hartford's claim as here made is barred by the Virginia Workmen's Compensation Act is without merit. Appalachian was a stranger to the construction work then being performed. Buffkin and Galo had the right to sue this stranger to recover their claimed losses over and above the amount of workmen's compensation benefits received from their employer's carrier. The carrier (Pennsylvania) received its pro rata share of Buffkin's and Galo's settlement of their suit against Appalachian.

Hartford's recovery against Williams was not predicated on contract—it was grounded solely on Williams' active negligence. Therefore Pennsylvania's exclusion as set forth in paragraph (c) of its policy is not here applicable.

The plaintiff will be awarded judgment against the defendants jointly and severally for the amount Appalachian paid Buffkin and Galo in settlement of their claims—namely, $35,000.00, together with interest from the date paid.

Plaintiff's claim for the additional sum of $4,801.51 covering attorney fees and costs incurred in defending Buffkin's and Galo's suit will be denied.

Although attorney fees and costs are recoverable in contractual indemnity, they are rarely if ever allowed in common law indemnity actions. See O'Connell v. Jackson, 273 Minn. 91, 140 N.W. 2d 55 (1965), and Sinclair Oil & Gas Co. v. Brown, 220 F.Supp. 106 (E.D.Okl. 1963).

In the Buffkin-Galo suit Appalachian was defending against its own alleged negligence.

The Clerk will send copies of this order and memorandum opinion to all counsel of record.

The attorney for the plaintiff will prepare an appropriate judgment order in

accordance with this memorandum opinion, submit it to counsel for the defendants for approval as to form, and then to the Court for entry.