TANKREDERIET GEFION A/S, as Owner of the MOTORSHIP GYDA,
Plaintiff,

v.

HYMAN–MICHAELS COMPANY and Lakes Shipping & Trading Corp., Defendants and Third-Party Plaintiffs-Appellants,

v.

MICHIGAN FOUNDRY SUPPLY CO., Inc., Erickson Trucking Service, Inc., Third-Party Defendants,

and

National Cargo Bureau, Inc., Third-Party Defendant-Appellee.

TANKREDERIET GEFION A/S, as Owner of the MOTORSHIP GYDA,
Plaintiff,

v.

MICHIGAN FOUNDRY SUPPLY CO., Inc., Defendant and Third Party Plaintiff-Appellant,

v.

ERICKSON TRUCKING SERVICE, INC., Third-Party Defendant,

and

National Cargo Bureau, Inc., Third-Party Defendant-Appellee.

TANKREDERIET GEFION A/S, as Owner of the MOTORSHIP GYDA,
Plaintiff,

v.

NATIONAL CARGO BUREAU, INC., Defendant-Appellee,

W. P. Lewis and G. P. Sullivan, Defendants.

NATIONAL CARGO BUREAU, INC., Third-Party Plaintiff-Appellee,

W. P. Lewis and G. P. Sullivan, Third-Party Plaintiffs,

v.

LAKES SHIPPING AND TRADING CORPORATION, an Illinois Corporation, Hyman-Michaels Company, an Illinois Corporation, Michigan Foundry Supply Co., Inc., a Michigan Corporation, Third-Party Defendants-Appellants,

and

Erickson Trucking Service, Inc., a Michigan Corporation, Third-Party Defendant.

The TOKIO MARINE & FIRE INSURANCE COMPANY, Ltd., a foreign corporation, et al., Plaintiffs,

v.

HYMAN–MICHAELS COMPANY, an Illinois Corporation, and Michigan Foundry Supply Company, Inc., a Michigan Corporation, Defendants and Third-Party Plaintiffs-Appellants,

v.

NATIONAL CARGO BUREAU, Inc., a New York Corporation, Third-Party Defendant-Appellee,

and

Erickson Trucking Service, Inc., a Michigan Corporation, Third-Party Defendant.

No. 19167.

United States Court of Appeals
Sixth Circuit.

Feb. 10, 1969.

**1040**

---

Thomas E. Byrne, Jr., Philadelphia, Pa., Krusen, Evans & Byrne, Philadelphia, Pa., Lucking & Miller, Donald J. Miller, Detroit, Mich., on brief for Hyman-Michaels Co. and Lakes Shipping et al.

Leroy G. Vandeveer, Detroit, Mich., Achtenberg, Sandler & Balkin, Irving Achtenberg, Kansas City, Mo., Alexander, Buchanan & Conklin, Richard A. Harvey, Detroit, Mich., Vandeveer, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., on brief, for Michigan Foundry Supply Co.

David V. Martin, Detroit, Mich., Martin Bohall, Joselyn, Halsey & Rowe, Detroit, Mich., on brief for appellee, National Cargo Bureau.

Before O'SULLIVAN, EDWARDS and McCREE, Circuit Judges,

EDWARDS, Circuit Judge.

Appellants Hyman-Michaels Co. and Michigan Foundry Supply Co. appeal on leave granted from an interlocutory order entered by a District Judge in the United States District Court for the Eastern District of Michigan. The order was entered during trial of eleven cases arising out of a spontaneous combustion fire in a load of steel scrap which damaged both the cargo and the ship in which it was being transported to Japan.

After close of plaintiffs' proofs and the taking of considerable testimony from defendants, appellants [principal defendants in the trial] entered into a settlement with plaintiffs Tankrederiet Gefion A/S, as owner of the Motorship GYDA, and Mitsubishi, a Japanese trading company, owner of the cargo. Subsequently, as the trial continued, on appellants' complaints against third-party defendant National Cargo Bureau, which had been filed under Rule 14(a) of the Federal Rules of Civil Procedure, National Cargo Bureau objected to plaintiffs' tender of proofs concerning the prudence and reasonableness of their settlement. Thereupon after extensive argument the District Judge entered the following order:

> "IT IS HEREBY ORDERED that in all further proceedings in these cases it shall be the burden of the Third-Party Plaintiffs HYMAN-MICHAELS COMPANY and MICHIGAN FOUNDRY SUPPLY COMPANY, INC., to establish their actual liability to the plaintiffs before they shall be entitled to recover indemnity or contribution.

> "IT IS FURTHER ORDERED that no evidence as to the reasonableness of settlements or the reasonableness of the amount of the settlements may be received in evidence."

It is this order from which the interlocutory appeal is taken.

This appeal is heard upon the following stipulation of facts:

> "(1) This litigation involves a consolidation of a number of suits arising out of the shipment of a cargo of 6,000 tons of steel turnings on board the Norwegian Motorship GYDA in the summer of 1961. The turnings were loaded at Muskegon, Michigan, consigned to Japan. Spontaneous heating of the cargo followed. The ship anchored in Detroit for approximately nine days in the hope that the cargo would cool. Thereafter it sailed, and upon arrival at Philadelphia the cargo was unloaded because of fire which damaged the ship and cargo. The total of all of the alleged damages is approximately $750,000.

"(2) Eleven suits, many with cross-claims and third-party claims, were filed and later consolidated for trial by order of the Trial Court. The Trial Court also ordered a severance of the trial of the damage issues, with the trial of the liability issues to proceed first, in order of time. Four of the suits have been dismissed for various reasons.

"(3) Trial of the liability issues commenced before the Honorable Chief Judge Ralph M. Freeman of the Court below on June 18, 1968. Six of these actions are non-jury cases. These are the actions brought by the ship owner plaintiffs. The other action brought by the cargo owner plaintiffs, is a jury action. All seven actions were being tried simultaneously. One of these actions was dismissed at the close of the plaintiffs' proofs. Six are still in progress, including the case being tried to the jury. This appeal directly involves only the jury case, Civil No. 24638, and three of the non-jury cases, Admiralty Nos. 23990, 23991 and 25386.

"(4) Civil Action No. 24638 involves suit by the cargo plaintiffs against Hyman-Michaels Company and Michigan Foundry Supply Company. The defendants have filed third party complaints against National Cargo Bureau seeking indemnity and contribution.

"Admiralty No. 23990 involves suit by the ship owner plaintiffs who have brought suit against Hyman-Michaels Company and Lakes Shipping & Trading Corporation, who have third party complaints against National Cargo Bureau, seeking indemnity and contribution.

"Admiralty No. 23991 involves a suit by the ship owner plaintiffs against Michigan Foundry Supply Company, who has a third party complaint against National Cargo Bureau seeking indemnity and contribution.

"Admiralty No. 25386 involves suit by the ship owner plaintiffs against National Cargo Bureau, who has a third party complaint against Hyman-Michaels Company, Lakes Shipping & Trading Corporation, Michigan Foundry Supply Company and Erickson Trucking Service, seeking indemnity and contribution.

"(5) From time to time during the course of the trial, possibility of settlement was discussed both in and out of the Court's presence. From the first instance, National Cargo Bureau indicated that it did not wish to participate in any settlement. In view of National Cargo Bureau's position, some of the other defendants conducted settlement negotiations with the plaintiffs both in and out of the presence of the Court. National Cargo Bureau did not participate in these negotiations. In connection with preliminary settlement discussions and before final settlement negotiations, counsel for National Cargo Bureau was asked if it would dismiss its third party complaint against Hyman-Michaels Company, Michigan Foundry Supply Company and Erickson Trucking Service, who eventually settled with the plaintiffs, and National Cargo Bureau replied that it would not.

"The defendants Hyman-Michaels Company, Lakes Shipping & Trading Corporation, Michigan Foundry Supply Company and Erickson Trucking Service made settlement agreements with the plaintiffs, and after these agreements had been arrived at National Cargo Bureau was advised of the settlement agreements and was advised of the total amounts that would be paid to the plaintiffs, and was further advised that the settling defendants intended to continue their third party actions against National Cargo Bureau.

"After the settlement agreements had been reached and after National Cargo Bureau had been advised of the settlements, the settling defendants proceeded with their proofs on their third party actions for indemnity and contribution. In the course of pre-

senting proofs, there came a time when the settling defendants proposed to offer evidence that the settlements were prudent and reasonable. National Cargo Bureau objected to the introduction of this proposed evidence, and asserted that the settling defendants must prove actual liability and not merely potential liability to the plaintiffs.

"After hearing arguments of Counsel, the Court rendered an opinion and entered an order to the effect that the settling defendants, as a condition precedent to their claims for indemnity and contribution, had the burden of proving actual liability to the plaintiffs rather than potential liability to the plaintiffs."

Although not included in the stipulation above, an additional fact crucial to our decision is cited in appellee's brief in this appeal, is not denied in appellants' briefs, and was conceded by appellants at oral hearing. This is the fact that, although appellee had full notice of the litigation and was interpleaded as a party thereto, and further, was notified of the settlement negotiation and invited to participate therein, appellants did not prior to settlement seek appellee's approval or tender the defense of this action to appellee in exchange for a hold-harmless agreement.

In this case the appellants (the original defendants, henceforth B) settled the claim of the original plaintiffs, A, without first tendering the defense to the appellee (the third-party defendant, C) in exchange for a hold-harmless agreement. In these circumstances the District Judge required B to prove actual liability to A in his suit against C.

■ The District Judge's holding when applied to the facts of this case is, we believe, in accord with the majority view. The following cases tend to uphold the general rule that an indemnitee must show actual liability to recover against an indemnitor. The TOLEDO, 122 F.2d 255 (2d Cir.), cert. denied, Isbrandtsen-Moller Co. v. The TOLEDO, 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 55 (1941); Jennings v. United States, 374 F.2d 983 (4th Cir. 1967); Nelson v. Sponberg, 51 Wash.2d 371, 318 P.2d 951 (1957); Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 67 N.E. 439 (1903); Donald v. Guy, 127 F. 228 (E.D.Va. 1903).

In *The TOLEDO* the Court said:

"A claim for indemnity, however, requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity." The TOLEDO, 122 F.2d at 257.

In *Jennings*, the Fourth Circuit, through Judge Sobeloff, said:

"The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements." Jennings v. United States, 374 F.2d at 986.

Cases where the original defendant's claim for indemnification is founded on a judgment are, of course, distinguishable from the instant case, since actual liability has been established. City of Chicago v. Robbins, 2 Black 418, 67 U.S. 418, 17 L.Ed. 298 (1862); Robbins v. City of Chicago, 4 Wall. 657, 71 U.S. 657, 18 L.Ed. 427 (1866); City of Detroit v. Grant, 135 Mich. 626, 98 N.W. 405 (1904).

Distinguishable also are cases where the third party was tendered the defense and refused it. St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1906); West Coast Terminals Co. of Calif. v. Luckenbach Steamship Co., 349 F.2d 568 (9th Cir. 1965); Damanti v. A/S Inger, 314 F.2d 395 (2d Cir. 1963); Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 320 F.2d 685 (1963); California Stevedore & Ballast Co. v. Pan-Atlantic Steamship Corp., 291 F.2d 252 (9th Cir. 1961); Chicago, Rock Island & Pacific Ry. Co. v. Dobry

Flour Mills, 211 F.2d 785 (10th Cir. 1954).

Obviously distinguishable also are cases where the original defendant's claim against the third party is founded upon a written contract of insurance or indemnification where the insurance company or indemnitor agreed to defend or to pay damage claims against another. St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1906); Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 320 F.2d 685 (1963). In these cases ultimate decision turns upon the language of the contractual undertaking. Thus in *St. Louis Dressed Beef & Provision Co.* Justice Holmes said:

> "We assume that the settlement was reasonable, and that the plaintiff could not expect to escape at less cost by defending the suits. If this were otherwise, no doubt the defendant would profit by the fact. The defendant did not agree to repay a gratuity, or more than fairly could be said to have been paid upon compulsion. But a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. at 182, 26 S.Ct. at 404.

These words, however, were written in a quite different context than that provided by the facts of our instant case. In *St. Louis Dressed Beef & Provision Co.* party C was an insurance company which violated an express insurance contract which required it to defend party B after it had had notice and demand for such defense. In addition, in relation to B's suit against C in *St. Louis Dressed Beef*, the Court of Appeals certified to the Supreme Court that party B was liable on A's claim which party B had settled. In addition, Justice Holmes' holding was bottomed on an interpretation of the language of the insurance contract which called upon party C to pay such "claims" as party B was "compelled" to pay.

One court has held in a Federal Tort Claims Act case that a claimant against the United States need only prove probable liability and reasonableness of the settlement which he made with his injured employee. Chicago, Rock Island & Pacific Ry. Co. v. United States, 220 F. 2d 939 (7th Cir. 1955). The Court, however, relied strongly upon the broad language of the F.T.C.A.

All in all, we believe the position taken by the District Judge is sound. We recognize the interest the courts have in encouraging settlements. We also recognize the difficulties of requiring a party who has been engaged in contesting liability suddenly to turn about and seek to prove the truth of that which he has been denying. But the settlement itself represents a substantial change of position, and certainly the original defendant has the right to turn about and point to the facts which occasioned it.

■ More important, however, is the fact that a tender of the defense in exchange for a hold-harmless agreement is a feasible protection for the party desiring to settle, as well as for the proposed indemnitor. It certainly seems appropriate for B, the party desiring to settle and possessing the facts pertaining to the settlement, to be required to tender C the choice of approving the settlement or of going forward with the defense in exchange for a hold-harmless agreement. We assume that such a hold-harmless agreement would constitute C's financially responsible guarantee that B would under no circumstances be forced to pay more than the sum for which it was prepared to settle. If such a tender were refused and B settled, then we think the proofs required in the subsequent suit against C would appropriately be potential liability and reasonableness of the settlement.

The ultimate problem with any other rule than that which the District Judge laid down here is that potentially it would allow B (the original defendants)

to spend C's (the third-party defendant) money without the final judgment of a court or C's agreement. Deciding whether to try a case to judgment or to settle it involves elements of legal evaluation, of financial capacity to take risk, and of appetite for court room conflict which vary widely among litigants. We hold that under the facts of this case B cannot compel C to accept B's evaluation of these critical factors. Any other rule would deny C any opportunity to contest B's liability to A—a liability which C may be required to pay.

■ In this case we do not think that any conduct on the part of C (appellee herein) constituted a waiver of its right to a tender of the defense. Of course, C had full knowledge of the litigation, and further, as we have noted, knew that settlement negotiations were going on. But, clearly, again as noted above, B never made a formal tender of the defense. And there is nothing in this record to show that B ever disclosed the settlement terms to C and asked C, as a potential indemnitor, to approve.

The order of the District Judge is affirmed.