**Murray W. WHITTLE, Plaintiff,**

v.

**TIMESAVERS, INC., et al., Defendants.**

**Civ. A. No. 81–0190–D.**

United States District Court,
W.D. Virginia,
Danville Division.

Sept. 28, 1983.

Robert L. Morrison, Jr., Warren, Parker, Williams & Stilwell, Danville, Va., for plaintiff.

Joseph M. Winston, Jr., Clement & Wheatley, Danville, Va., William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

KISER, District Judge.

This matter is before the Court on Defendant Timesavers, Inc.'s (Timesavers) Motion for Summary Judgment to a cross-claim for indemnity filed by Plywood Equipment Sales, Inc. (PES) against Timesavers for an amount paid by PES in settlement of a personal injury claim. The original action was brought by Murray W. Whittle (Whittle) against PES, Timesavers, and U.S. Plywood-Champion Papers, Inc. (U.S. Plywood). PES also seeks the attorneys' fees expended in its defense of the underlying action. For the following reasons, Timesavers' Motion for Summary Judgment is DENIED.

## BACKGROUND

Whittle filed suit against Timesavers, PES and U.S. Plywood alleging that these Defendants had been negligent and had breached implied warranties in the sale of an industrial woodworking machine, a sander. This machine had been manufactured by Timesavers and was originally sold to U.S. Plywood. Timesavers had then accepted the sander as a trade-in from U.S. Plywood and subsequently sold it to PES "in place" at U.S. Plywood's plant. PES, in turn, sold the sander to Whittle's employer, Whittle Plywood Corporation, and in its sale invoice noted that the machine was sold "as-is, where-is."

In his Complaint, Whittle asserted that he sustained personal injuries due to the negligence and breach of implied warranties of Defendants. Specifically, he maintained that all Defendants were negligent in failing to guard moving parts properly, to install safety devices, and to fully and adequately warn intended and expected users of the hazards and dangers not apparent in the sander.

In response, PES filed its answer and this cross-claim. In the cross-claim against U.S. Plywood and Timesavers, PES contended that both Defendants breached express and implied warranties in the sale of the sander to PES and that the duty to properly guard the equipment, to install safety devices and to warn intended users was solely the responsibility of these co-Defendants.

Several months before trial, this Court granted U.S. Plywood's Motion for Summary Judgment. The remaining Defendants settled separately with Whittle prior to the conclusion of the trial, PES settling before

trial and Timesavers settling during the trial.

The issues now before this Court are:

1. Whether PES may maintain an indemnity action against Timesavers;

2. What proof is required in such an indemnity action; and

3. Whether PES may recover its attorneys' fees for services rendered in defense of Whittle's original claim.

DISCUSSION

A. The Indemnitor-Indemnitee Relationship

■ To be entitled to indemnity for its settlement with Whittle, PES must first show that an indemnitor-indemnitee relationship existed between Timesavers and itself. Indemnity may arise either in contract or in tort. *General Electric Co. v. Cuban American Nickel Co.,* 396 F.2d 89, 90 (5th Cir.1968). The two types of indemnity rest on separate and distinct theoretical bases and require proof and evaluation of different elements. *Parfait v. Jahncke Service, Inc.,* 484 F.2d 296, 303 (5th Cir.1973), *cert. denied, sub. nom. Home Indemnity Company v. Ruppel,* 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974).

■ PES originally sought indemnification based on both tort and contract theories but has now abandoned the tort theory and is proceeding on the contract theory only. Timesavers challenges PES' right to indemnity on a contract theory because Whittle's Complaint alleged causes of action sounding both in tort and contract. Timesavers argues that PES, by necessity, settled only its exposure on Whittle's tort count because PES had an absolute defense to the warranty counts (i.e., a valid "as-is, where-is" disclaimer). Timesavers then reasons that the tort count against PES was an independent act of negligence by PES for which Timesavers is not responsible (i.e., an independent duty of PES to inspect and warn of any defective conditions of the machine). Timesavers thus concludes that since PES' settlement was to settle its exposure as to the negligence allegations only and PES having abandoned its

tort-based indemnity claim, this action for indemnity against Timesavers does not lie. I disagree with the Timesavers' position.

PES settled with Whittle all claims against it as alleged in Whittle's complaint—regardless of the merit (or lack thereof) of the various theories of liability. But assuming, arguendo, that the only colorable claim Whittle asserted against PES was PES' failure to inspect and warn, PES' claim for indemnity is not defeated.

When Timesavers sold the machine to PES an implied warranty of merchantability ran with the sale. A portion of that implied warranty was that Timesavers had inspected the machine, it was free of defects and it would warn PES of any defects. *Bly v. Otis Elevator Company,* 713 F.2d 1040 (4th Cir.1983). Consequently, it matters not that PES may have settled with Whittle on a negligence theory only. PES had a right to rely upon the implied warranty of Timesavers that the machine was free of defects and that no inspection and warning to Whittle were necessary. *Manning Mfg. Co. v. Hartford Products Corp. of New England,* 99 F.2d 813 (2d Cir.1938).

In *Manning,* the Second Circuit, speaking through Judge Swan, clearly articulated the indemnity rights of an intermediate merchant vis-a-vis his supplier, stating:

[a]lthough the plaintiff was not justified as against [his customer] in relying upon the defendant's warranty that the kerosene was of standard proof, there is no policy of law which forbids the defendant from being held to make its representations good to the plaintiff ... [and] plaintiff is entitled to rely upon the representations of the defendant's warranty. Where such reliance is justifiable the doctrine is avoided and indemnity may be had from the party who supplied the dangerously defective article ... That the action was brought in tort rather than upon the contract is immaterial. 99 F.2d 814.

Nor do I see any impediment to PES'

claim arising from Va.Code § 8.01–35.1[1]. This statute governs only those claims for contribution between tort feasors, a relation that is created in law by the commission of the tort. The statute does not purport to speak to indemnity rights which arise from a contractual relationship between contracting parties.

In sum, I find that the sale of the machine to PES by Timesavers established a contractual relationship between the two parties out of which arose PES' right to be indemnified for damages incurred by it which were caused by Timesavers' breach of the implied warranty of merchantability. *McCain Mfg. Corp. v. Rockwell Intern. Corp.*, 695 F.2d 803 (4th Cir.1982).

### B. The Proof Required in an Indemnity Action

The next issue I address is whether PES must prove its actual liability or merely its potential liability to the original Plaintiff. The actual versus potential liability issue arises where the original claim has not gone to judgment and the original defendant (indemnitee) has settled with the original plaintiff without giving the third-party defendant (indemnitor) an opportunity to approve the amount of the settlement or conduct the defense, and in which traditional indemnity principles are not modified by express contract between the parties. *Parfait v. Jahncke Service, Inc., supra,* 484 F.2d at 304. At a minimum, the indemnitee must demonstrate his potential liability to the original plaintiff. In some instances, when the original claim has been settled, a showing of actual liability may be required to support that indemnity. *Id.*

In *Jennings v. United States,* 374 F.2d 983 (4th Cir.1967), it was held that actual liability to the person with whom settlement was made must be proved by the indemnitee because indemnitor did not have notice and an opportunity to defend the original claim. In that case, suits were brought in state court against Jennings to recover damages for personal injuries sustained by occupants of another vehicle and a passenger in Jennings' decedent's car in a collision on a parkway constructed and maintained by the United States. Jennings' insurance carrier assumed defense of these actions and settled with the various plaintiffs after the trial had begun. Although the United States was not a party to the suit, the release executed by the parties designated the United States as one of the parties released from liability. The insurance carrier then sought indemnification from the United States for the sum paid in these settlements.

The *Jennings* court, after pointing out that the United States was neither notified of the pendency of these actions, the settlement offer, nor the terms of the final settlement, stated:

> The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements.

However, the court also stated:

> The concept that notice plus an opportunity to defend render binding on an indemnitor the judgment in a case in which he did not participate springs from notions of res judicata. The reasoning is that where an indemnitor is notified and can take part in—indeed may control— the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. *The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court.* 374 F.2d at 985–86 (emphasis added).

In *Tankrederiet Gefion A/S v. Hyman-Michaels Co.,* 406 F.2d 1039 (6th Cir.1969), proof of actual liability was required before plaintiffs were entitled to recover in the indemnity action. In its decision, the Sixth

---

**1.** This statute changes the common law by permitting a claimant to release one joint tort feasor without releasing the other joint tort feasor(s). It also defines the rights of contribution between the joint tort feasor(s) when such a release occurs.

Circuit emphasized that "... although the appellee [potential indemnitor] had full notice of the litigation and was interpleaded as a party thereto, and further was notified of the settlement negotiation and invited to participate therein, appellants [settling defendants] did not prior to settlement seek appellee's approval or tender the defense of this action to appellee in exchange for a hold-harmless agreement." 406 F.2d at 1042. The court further observed that had a tender been made by any indemnitee to the potential indemnitor of the choice of approving the settlement or of going forth with the defense and had these options been refused and the indemnity settled, "then we think the proofs required in the subsequent suit against [the indemnitor] would appropriately be potential liability and reasonableness of the settlement." *Id.* at 1043.

In contrast, in *Parfait v. Jahncke Service, Inc., supra,* the Fifth Circuit merely required the indemnitee to show potential liability and that its settlement was reasonable in amount. Initially, the court noted that indemnitee could avoid being required to prove the original plaintiff's case against himself by offering to the indemnitor before any settlement is concluded, the choice of either: (1) approval of the proposed settlement; or (2) the opportunity to take over his defense of the case. Having said this, the court pointed out that while the indemnitee had not formally offered to the indemnitor for approval the settlement offer, it had kept the indemnitor continuously informed of the settlement negotiations in progress and had offered to turn over the defense of the original action. On these facts, the *Parfait* court concluded that the indemnitor was afforded substantially the same protection as if the procedure recognized in *Tankrederiet Gefion* had been followed.

*Parfait* is more closely aligned with the *Jennings* decision than is *Tankrederiet Gefion* in that there is no requirement that the indemnitee make a formal demand of the indemnitor to take over the defense or approve the settlement offer in order for the indemnitee to avoid the higher burden of proving its actual liability. Indeed, the Fourth Circuit stated that where notice and

opportunity to defend have been afforded the indemnitor, "the indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee ..." 374 F.2d at 986. The *Jennings* court reasoned that notice and an opportunity to participate is something akin to *res judicata* and when these two elements are present the indemnitor has had his day in court on the issue of indemnitee's actual liability to the original claimant. Once the indemnitor has been furnished notice and granted an opportunity to participate in settlement negotiations, it is only fair that he come forward and protect his interest. If he fails to do so he should not be heard to complain that the indemnitee was not liable to the original claimant.

Turning to the facts of the present case, it must be remembered that Timesavers was both a defendant in the Whittle Complaint and a cross-defendant in the Cross-Complaint and as such was fully aware of all proceedings in the case. Moreover, Timesavers and PES have stipulated that Timesavers was requested on several occasions by counsel for PES to enter into a settlement agreement with Whittle, the original Plaintiff. In addition, counsel for PES advised Timesavers' counsel that it would seek to settle Whittle's claim against it after Timesavers declined to participate in a settlement. PES finally settled with Whittle on the morning of trial.

The mere recitation of the facts demonstrate that Timesavers was fully notified of the posture of the litigation as it progressed and was advised of the efforts of PES to effect a settlement with Whittle. Although PES made no formal demand on Timesavers to assume PES' defense of the lawsuit nor did it apprise Timesavers of the details of its settlement with Whittle, it is clear that Timesavers had ample notice and opportunity to participate in the lawsuit and the settlement negotiations and thus the notice and opportunity requirements of *Jennings* are satisfied. Accordingly, I find that it is not necessary that PES meet the higher standard of proving actual liability to Whittle. It need prove only that its settlement was reasonable and in good faith.

## C. Attorneys' Fees

In addition to the amount paid to Whittle in settlement, PES is claiming attorney's fees and costs expended in defending the suit. Since the claim for indemnity is contractual, these are appropriate elements of damage. *See Hartford Accident & Indemnity Co. v. H.P. Williams,* 291 F.Supp. 103, 106 (W.D.Va.1968); *Tidewater Construction Corp. v. Southern Materials Co.,* 269 F.Supp. 1000, 1006 (E.D.Va.1967), aff'd, 393 F.2d 933 (4th Cir.1961); *Southern Railway Co. v. Arlen Realty & Development Corp.,* 220 Va. 291, 257 S.E.2d 841 (1979).

For the foregoing reasons, I hold:

1. PES has established a triable issue for contractual indemnity, and;

2. PES need prove only that its settlement with Whittle was reasonable and in good faith, and;

3. The damages which may be recovered are the amount paid to Whittle and attorney's fees and costs expended by PES in defending against Whittle's claim. (The parties have stipulated these amounts are reasonable.)

An appropriate order will be entered.