Murray W. **WHITTLE, et al., Plaintiffs,**

v.

**TIMESAVERS, INCORPORATED, et al., Defendants.**

**Civ. A. No. 81–0190–D.**

United States District Court,
W.D. Virginia,
Danville Division.

May 17, 1985.

Joseph M. Winston, Jr., Luis A. Abreu, Clement & Wheatley, Danville, Va., for Plywood Equipment Sales.

William B. Poff, Anderson Cromer, Woods, Roger & Hazelgrove, Roanoke, Va., for Timesavers, Inc.

## MEMORANDUM OPINION

KISER, District Judge.

This case is presently before this Court on remand from the United States Court of Appeals for the Fourth Circuit. On September 28, 1983, I denied the Defendant Timesavers, Incorporated's ("Timesavers") Motion for Summary Judgment on a cross-claim for indemnity filed by their Co-Defendant Plywood Equipment Sales ("PES"). *Whittle v. Timesavers*, 572 F.Supp. 584 (W.D.Va.1983). This denial was subsequently appealed, reversed and remanded with precise instructions to consider two rather specific questions in light of the facts of this case. *Whittle v. Timesavers*, 749 F.2d 1103, 1106 (4th Cir.1984). The first question presented is whether an implied warranty of merchantability runs with the sale of a *used* product, and secondly, whether such an implied warranty will give rise to an implied contract of indemnity.

Before beginning this analysis, it would be beneficial to very briefly consider the historical posture and the facts of this case. Mr. Murray W. Whittle originally filed this products liability action against Timesavers, PES and U.S. Plywood Champion Papers, Incorporated ("Champion") seeking damages for injuries sustained while using an industrial wood sander. He alleged that the Defendants had been negligent and had breached the implied warranties in the sale and that this caused his injuries. This

sander had been originally designed and manufactured by Timesavers who initially sold it to Champion. After a period of time, Timesavers reacquired ownership, but not possession of the sander, as a trade-in from Champion. Timesavers then sold the machine, still in place at the Champion plant, to PES who was and is in the business of refurbishing and selling used industrial woodworking equipment. PES sold the sander to Whittle Plywood, the original plaintiff's employer, on an "as is—where is" basis. Following the institution of this suit by Whittle, PES filed a cross-claim against Timesavers seeking indemnity. Prior to trial, PES settled with Whittle, and Timesavers settled during the trial. Timesavers then filed a Motion for Summary Judgment against PES which was denied by this Court. *See Whittle, supra,* 572 F.Supp. 584 (W.D.Va.1983). The subsequent history of this litigation is all too well known by the parties.

## I.

On remand, the initial issue which must be considered is whether an implied warranty of merchantability runs with the sale of a used good. An implied warranty of merchantability in this State finds its legitimacy in the Virginia Commercial Code which became effective on January 1, 1966. This warranty arises by operation of law, and not by agreement of the parties. *Anderson on the Uniform Commercial Code,* § 2–314:25 (3rd Ed.1983). The relevant statute provides in pertinent part:

(1) Unless excluded or modified (§ 8.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind.

*Va. Code* § 8.2–314 (1950), *as amended.*

■ This warranty of merchantability is implied in every sale made by a merchant seller unless excluded in a manner which is effective under the Code. *Anderson, supra,* § 2–314:25. There is little question that had the sander been a new product the warranty would have followed. Timesavers certainly qualifies as a merchant with

regard to these particular goods and absent an express exclusion sufficient under *Va. Code* § 8.2–316, the warranty would apply. Thus, the question is whether this result would be any different when the product was used. I believe not.

The provisions of the Code relating to warranties applies to all goods, without any distinction as to whether the goods are new or used goods. Therefore, any warranty authorized by the Code may arise with respect to the sale of used or secondhand goods.

*Anderson, supra,* § 2–314:188.

The Code makes absolutely no distinction between new and used goods when defining "goods" in *Va.Code* § 8.2–105, 1950, *as amended.* If the drafters of the Code had intended for this particular section to apply only to new goods, then it would have been simple to have so stated; however, this was not done. In the absence of express language to the contrary, I believe that in the area of implied warranties that no distinction is made between new and used goods. This view is followed by other commentators on this subject as well as numerous other jurisdictions who have considered this question. *See,* Robert I. Stevenson, *Virginia and West Virginia Products Liability* at 117 (1983); *A.L. Crandell v. Larkin and Jones Appliance Company,* S.D., 334 N.W.2d 31, 36 (1983); *International Petroleum Services, Inc. v. S & N Well Service, Inc.,* 230 Kan. 452, 639 P.2d 29, 34 (1982); *Natale v. Martin Volkswagen, Inc.,* 92 Misc.2d 1046, 402 N.Y.S.2d 156, 158 (N.Y.City Ct.1978); *Knipp v. Weinbaum,* 351 So.2d 1081, 1084 (Fla.App. 1977); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349 (1976); *Georgia Timberlands, Inc. v. Southern Airways Co.,* 125 Ga.App. 404, 188 S.E.2d 108, 109 (1972).

■ Timesavers has skillfully argued that no such implied warranty attached to the sale of used goods. As support, they point to one of the official comments to the Uniform Commercial Code which states:

A contract for the sale of secondhand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description. *Va. Code* § 8.2–314, Comment 3, 1950, *as amended.*

Timesavers argues that this supports the proposition that there is no implied warranty of merchantability with used goods. On the contrary, I believe that this supports even further the conclusion that the drafters intended not to make a distinction between new and used goods. Had the implied warranty been intended to apply only to new goods, this comment would be meaningless. This statement by the drafters refers to the scope of the warranty and not the existence of such. It merely indicates that when you buy a used product you cannot expect it to be as good as a new one. In short, the warranty which attaches to a used good obviously takes into account normal wear and tear. *See International Petroleum Services, Incorporated v. S & N Wells Service, Incorporated,* 230 Kan. 452, 639 P.2d 29; *McCormack v. Lynn Imports, Incorporated,* 114 Misc.2d 905, 452 N.Y.S.2d 821.

■ PES accurately notes that this limitation would not be of any relevance in a design defect case. If a product is defectively designed when new, then it is no less so when used. The original Plaintiff in this action, Murray Whittle, specifically alleged that Defendants were negligent in failing to guard moving parts properly and to install safety devices and of failing to fully and adequately warn of the dangers. While it is true that these charges were never proven, if any warranties were breached it would have been the result of a design defect.

Additional authority cited by Timesavers is the Virginia Supreme Court case of *Smith v. Mooers,* 206 Va. 307, 142 S.E.2d 473 (1965), wherein the court held that there was no implied warranty with a used product. This, however, is a pre-Code case and as such is not binding. Timesavers argues on the contrary that *Smith* is still good law since it was not specifically over-ruled by the Code. This position is without merit. The very wording of the statute in question would indicate otherwise. The statute provides that "unless excluded or modified (§ 8.2–316)" a warranty is implied. With the exception of the circumstances set forth in *Va. Code* § 8.2–316, a warranty will exist. There are no implied exclusions to the implied warranty.

Contrary to the recognition of warranties in the sale of used goods, there are decisions that read into the Code an exception that is not expressly stated and refuse to find an implied warranty in the sale of used goods. This view is based upon pre-Code authority and should be regarded as displaced by exclusion: the warranty provisions of the Code exclude any implied exception by the fact that no exception is stated.

*Anderson, supra,* § 2–314:188.

■ While *Smith* may accurately reflect the state of the law prior to 1966, this was displaced by the General Assembly's enactment of the U.C.C. on January 1, 1966. Thus, I conclude that an implied warranty of merchantability for the used sander did run from Timesavers to PES.

## II.

■ The next issue is whether there is an implied contract of indemnity which derives its existence from the implied warranty of merchantability. I believe that there is.

Indemnity is distinguishable from contribution in that contribution springs from the equitable theory that where there is a common burden, as between joint tort feasors, there should be a common right, while *indemnity springs from an express or implied contract.* *Moretz v. General Electric Company,* 170 F.Supp. 698, 704 (W.D.Va.1959) (Emphasis Added).

An implied warranty of merchantability would suffice as such an implied contract. In considering this precise question, Anderson states:

When the defendant's breach of warranty has caused the plaintiff to sustain loss by subjecting him to liability to a third person, the plaintiff may obtain indemnity from the defendant.

*Anderson, supra,* § 2–314:15.

More specifically, "when a seller is held liable for a defect which also constitutes a breach of the implied warranty of the manufacturer to the seller, the seller is entitled to indemnity from the manufacturer." *Id.* at 2–314:16.

The case authority cited to this Court also supports this proposition.

Both the originator of the dangerous instrumentality and the subsequent owner owes duties to protect an innocent victim from its dangers. ... A duty arises on the part of the original supplier to indemnify his successor who has become liable to the person injured. There is no policy of the law which forbids a seller of a product from making good on his warranty to the buyer, whether the representation be expressed or implied.

*Eagle Star Insurance Company of America v. Metromedia, Incorporation,* 578 F.Supp. 184, 189 (D.Vt.1984).

Likewise, applying Missouri law, a federal district court held:

A retailer may have a right to indemnification from the manufacturer of a component part based on a breach of either an express or implied warranty.

*City of Clayton v. Grumman Emergency Products, Incorporated,* 576 F.Supp. 1122, 1128 (E.D.Mo.1983).

"An implied warranty may also be the basis for survival of an indemnity action." *Feehan v. United States Alliance, Incorporated,* 522 F.Supp. 811, 816 (S.D.N.Y. 1981). *Accord, Bell v. Federal Reserve Bank,* 57 F.R.D. 632, 635 (E.D.Va.1972).

While there is no specific Virginia authority directly on point, I believe that where there has been a breach of an implied warranty of merchantability that an implied contract for indemnity will lie. We need not reach the issue as to the degree of proof required to support an action for indemnity. This was thoroughly discussed in this Court's earlier opinion. *See Whittle v. Timesavers,* 572 F.Supp. 584 (W.D.Va. 1983).

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

An appropriate Order will be entered.