OPINION OF THE COURT
Joseph Goldstein, J.
“Things are seldom what they seem,
“Skim milk masquerades as cream;
“Highlows pass as leathers;
“Jackdaws strut in peacock’s feathers.”
(H.M.S. Pinafore.)
Gilbert and Sullivan put it to music, but all too often the purchaser of a used automobile has little to sing about and often much to cry about. While certainly there are used car dealers who are reputable and stand behind the product they offer to the public, there are others about whom the court wonders, invoking the well-used rhetorical inquiry which begins, “Would you buy a used car from this person?”
*906 The trial of this small claims case is most pertinent to that inquiry. After reviewing the testimony, this court finds itself in strong support of the Federal Trade Commission and the rules promulgated by it regarding the sale of used motor vehicles. These rules were recently disapproved by the Congress of the United States.
The salient facts testified to in this trial are essentially as follows: The plaintiff, Patricia McCormack, purchased a used, 1976 Chevrolet Camaro on August 28, 1980 from a used car dealer whom she believed to be Lynn Imports, Inc. The bill of sale, however, indicated the name and address of the business establishment at which the sales transaction was conducted to be Island Wide Auto, Inc., 280 Main Street, Hempstead, New York. The bill of sale, together with an odometer certificate, bears the name Island Wide Auto, Inc., as the seller and Miss McCormack as the purchaser. Based upon the foregoing, it would appear that plaintiff has brought the wrong party to court.
However, all is not as it first appears. Further documents were exchanged at the time of sale and seemed to indicate a somewhat different relationship between plaintiff and the named defendant. At the time of the sale, the plaintiff gave the salesman a teller’s check for $960. This salesman apparently worked for both Island Wide Auto, Inc., and Lynn Imports, Inc., and curiously enough, this teller’s check was made payable to Lynn Imports, Inc. The payment of $960 is reflected in the bill of sale from Island Wide Auto, Inc., as “cash on delivery”. Additionally, the salesman or someone in his office prepared a retail installment contract which was executed by the plaintiff at the time of sale. This document stated that the car being financed was in fact the 1976 Chevrolet Camaro and stated that the name and address of the seller was “Lynn Imports, Inc. of 257 Main Street, Hempstead, New York.” It also designated as the purchaser, plaintiff and one Virginia Kline. The value of the note, less interest and insurance, was also reflected on the bill of sale. Furthermore, certain insurance documents in connection with the installment contract were prepared by the seller and indicated the creditor to be Lynn Imports, Inc., the debtors being named as plaintiff and Miss Kline. These parties were identical in *907 all respects to those in the installment contract. Furthermore, all of the foregoing documents relating to the sales transaction, including the registration of the vehicle, were delivered to the plaintiff in an automobile folder bearing the imprinted name of Lynn Imports, Inc.
The court finds that the seller arranged for the registration of the car which included an automobile inspection as required by the State of New York, and in fact a mechanic employed by Lynn Imports, Inc., testified that he inspected the car and that it had “passed inspection.” The bill of sale given to the plaintiff included, among other things, the following statement: “This used vehicle is sold with a 30-day, 50/50 warranty. All work must be done on the premises. In addition, there is reference to a one-year full warranty.”
Within a few days after taking possession of the car, plaintiff found the car in an inoperable condition, called the salesman at Lynn Imports, Inc., and was told to bring the car in. She in turn suggested that the salesman arrange for the towing since the car was still under warranty. The car was subsequently towed at the direction of the salesperson to Lynn Imports, Inc., where certain repairs were performed. The car was serviced at Lynn Imports on or about September 2, 1980 and again on or about September 18, 1980. There was no charge for this service.
Plaintiff was led to believe that she had purchased a used automobile in good condition and was never told of any of its defects. She accepted the car, assuming the inspection was performed and that the car was in a safe and proper condition.
During the first several weeks thereafter, the plaintiff states that she reported to Lynn Imports, Inc., a difficulty in steering the car. The mechanic attributed this to some idiosyncracies of the automobile and a shortage of power steering fluid. For several months thereafter, plaintiff used the C amaro without incident except for that continuing complaint.
On April 14, 1981, some eight months after taking possession plaintiff was involved in what is described not only by plaintiff but by her expert as a relatively minor *908 front end collision. Following the collision, plaintiff brought her car to a mechanic, George Jones of G. Jones Collision, Inc., 98 Denton Avenue, New Hyde Park, New York. Mr. Jones has been in business for some 20-plus years and testified in a most credible fashion regarding the condition of the automobile. His professional opinion regarding the condition of the frame of the automobile when he first saw it was as follows: (a) a bent frame, (b) several metal washers which he referred to as “shims” which had been added to the frame of the automobile, the purpose of which was to raise or level a particular part of the car to a specific height, and (c) evidence of weld marks. All of these conditions, in his opinion, predated the collision.
Plaintiff, after being advised of the pre-existing bent frame, its weldings, and shims, returned to Lynn Imports, Inc., who refused to assist her in any regard. Defendant apparently took the position that the bent frame was the result of the recent accident and refused to reimburse her for any costs. The testimony of plaintiff’s automobile mechanic was clear and unequivocal, that the conditions testified to were not a result of the minor automobile collision, but were existent for some time.
The testimony also indicated that, since the purchase of the Camaro, plaintiff had had no other accident and the car was always within her control.
Based upon the credible evidence presented at the trial of this action, the court finds that the Camaro was unsafe to drive when it was sold to the plaintiff, and the defendant, Lynn Imports, Inc., knew or should have known of the existence of its unsafe condition.
Plaintiff called as a witness the salesperson who was employed by both Island Wide and Lynn Imports. He testified that he had purchased the automobile for Island Wide at an automobile auction and that it was subsequently sold by Island Wide to plaintiff. He stated that he knew nothing about the condition of the frame and undercarriage of the automobile. Plaintiff also called a mechanic from Lynn Imports, who testified that he had in fact inspected the automobile and made certain repairs to it, but that he had not advised plaintiff nor did he acknowl *909 edge that he had found any defects in the condition of the automobile.
In the midst of the trial, the defendant’s counsel moved to dismiss plaintiff’s claim upon the grounds that plaintiff had failed to establish a prima facie case against Lynn Imports, Inc., and further, that the defendant, Lynn Imports, Inc., was not the party from whom the plaintiff purchased the Camaro. The court reserved decision on that motion and this time denies same.
It is clear from the foregoing and based upon the credible evidence before this court that plaintiff has not been the recipient of fair dealing by the defendant, Lynn Imports, Inc. The law has long prohibited a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omission or commission, work fraud and injury. Estoppel is frequently based upon the acceptance and retention by one having knowledge or notice of benefits from a transaction or contract which he might have rejected or contests. (21 NY Jur, Estoppel, Ratification & Waiver, § 341.) Thus, one cannot accept the benefits of a contract made by one as his agent, and then prevent the other from showing what the contract was which was made with the agent. (White v Kenny, 146 App Div 803.) Moreover, a person is not permitted to retain that part of an agreement which is beneficial to him and repudiate that which is to his disadvantage. (Dodds v McColgan, 222 App Div 126.)
The evidence before this court indicates that the defendant, Lynn Imports, Inc., was the recipient of the cash proceeds from the sale of the Camaro. Whether or not Lynn Imports, Inc., shared the proceeds with Island Wide Auto, Inc., from either the cash or the bank loan is not before the court. Nevertheless, these facts prohibit the defendant, Lynn Imports, Inc., from denying that it was a party to the contract.
According to the Uniform Commercial Code, acceptance does not bar an action for damages. Nonconformity includes not only breaches of warranty but also any failure of the seller to perform according to his obligation under the contract. In the case of such nonconformity, the buyer is *910 permitted to recover for his losses in any manner which is reasonable. Furthermore, subdivision (1) of section 2-314 of the Uniform Commercial Code states, “Unless excluded or modified * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind” (emphasis supplied by this court).
Where it appears that the defect was one discoverable by reasonable physical inspection and further, that defendant either failed to inspect or inspected so negligently as not to discover the defect, defendant would be chargeable with constructive notice of the defect and therefore liable to plaintiff. On the other hand, defendant might have inspected the item, discovered the defect but failed to warn plaintiff thereof. (Naples v City of New York, 34 AD2d 577.) The courts have held that breach of warranty is not only a violation of the sales contract out of which the warranty arises, but it is a tortious wrong. (Goldberg v Kollsman Instrument Corp., 12 NY2d 432.)
An examination of the bill of sale reveals that the foregoing warranty of merchantability was neither excluded nor modified in any manner. In view of the foregoing facts, the court finds that the defendant herein is a merchant as described by section 2-314 of the Uniform Commercial Code. (See Stream v Sportscar Salon, 91 Misc 2d 99.) Clearly, in addition to the specific express warranty contained on the face of the document, the bill of sale by statute carried with it an implied warranty of merchantability in favor of the plaintiff in regard to the condition of the Camaro at the time of its sale. Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used. (Uniform Commercial Code, § 2-314, subd [2], pars [a], [c].) Thus, the question becomes, what is the ordinary purpose for which a used car is used? Perhaps this question sounds in redundancy, and yet, more than just this plaintiff is distressed by this inquiry.
This court concludes that a bare minimum the ordinary purpose for which a used car is to be used should be such as to enable the purchaser to transport herself upon the streets and highways of this State or any other in a *911 reasonably safe manner, and plaintiff’s car does not conform to such minimum qualification.
Section 417 of the Vehicle and Traffic Law provides in part as follows: “Upon the sale or transfer of title by a retail dealer of any second hand motor vehicle, intended for use by the buyer, his agent or representative upon the public highways, the vendor shall execute and deliver to the vendee an instrument in writing, in a form prescribed by the commissioner * * * and the date of delivery to the vendee. Such notice shall also contain a certification that said motor vehicle complies with such requirements of this chapter as shall be specified by the commissioner and that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery [emphasis supplied by this court]. The * * * delivery of a false certificate knowing the same to be false or misleading or without making an appropriate inspection to determine whether the contents of such certificate are true shall constitute a violation of this section. The delivery of a false certificate shall raise presumption that such certificate was issued without an appropriate inspection.” Subdivision (a) of section 301 of the Vehicle and Traffic Law requires that “Every motor vehicle sold or transferred for use on the public highways of this state by a dealer licensed * * * to any person * * * must be inspected and bear a valid certificate of inspection prior to delivery to the purchaser or transferee ” (Emphasis supplied by this court.) Furthermore, section 301 of the Vehicle and Traffic Law requires that, “Such inspection shall be made with respect to the brakes, steering mechanism, wheel alignment, lights, odometer and such other mechanisms and equipment as shall be determined by the commissioner to be necessary for proper and safe operations.” (Vehicle and Traffic Law, § 301, subd [c], par [1].)
Fortunately for persons purchasing automobiles in the State of New York, there is a requirement enunciated by the Commissioner’s Regulations of the Department of Motor Vehicles for the sale of a used vehicle. “When checked visually, the front wheels cannot be out of line, axle or front end assembly cannot be bent or twisted”. (See 15 NYCRR 78.13 [c] [16] [iii].) The courts of this State have *912 long held that where a dealer of used automobiles is involved, “The burden of preparing a motor vehicle to pass inspection standards rests upon the dealer.” (Natale v Martin Volkswagen, 92 Misc 2d 1046, 1049.) When the failure of a seller of a used motor vehicle to have such vehicle certified as being in good repair as required by the statute occurs, the buyer is entitled to recover damages from the seller. (Pierce v International Harvester Co., 61 AD2d 255.) 15 NYCRR 79.1 states that a certificate of inspection must be secured from the Department of Motor Vehicles by an official inspection station and affixed to a motor vehicle as prescribed by those regulations.
The Small Claims Part of the District Court, by statute, is mandated and directed to see that substantial justice is done for the litigants who appear before this court. To permit the defendant, Lynn Imports, Inc., to hide behind a shadow of a technicality in light of the facts enunciated herein would do a disservice to the very meaning and intent of the statute. That is not to say that plaintiff might not also have a cause of action against Island Wide Auto, Inc., if she is so advised. The plaintiff’s damages are found by this court to be in the sum of $1,000, and defendant, Lynn Imports, Inc., shall be liable therefore to the plaintiff in said amount.