*82 OPINION OF THE COURT
Peter E. Steeling, J.
After careful review and study, this court reached the following conclusions in the interest of doing substantial justice between the parties. First considered was the plaintiffs reliance upon the Used Car Lemon Law (General Business Law § 198-b). A review of the Used Car Lemon Law Bill of Rights reveals under items 4 through 6 that:
“4. If your engine, transmission, drive axle, brakes, radiator, steering, alternator, generator, starter, or ignition system (excluding the battery) are defective, the dealer or his agent must repair or, if he so chooses, reimburse you for the reasonable cost of repair.
“5. If the same problem cannot be repaired after three or more attempts, you are entitled to return the car and receive a refund of your purchase price or of all payments made * * *
“6. If your car is out of service to repair a problem for a total of fifteen days or more during the warranty period, you are entitled to return the car and receive a refund of your purchase price or of all payments made” (General Business Law § 198-b [f] [1] [emphasis added]).
The court rejects the defense’s theory that the vehicle was used and 12 years old and repairs could reasonably be expected to be needed. Clearly, the statute covers the vehicle in question since it cost more than $1,500 and had fewer than 80,000 miles on it at the time of sale. Similarly rejected was their fourth prong of defense that since the plaintiff accumulated 10,000 miles on the car that, at the IRS rate of 31 cents a mile, the plaintiff had achieved a value equal to the purchase price. First, most of those miles were recorded after the warranty period when the harm is claimed and are, therefore, irrelevant. Second, and more importantly, the court finds no provision in General Business Law § 198-b, commonly referred to as the Used Car Lemon Law, for such calculation of value as a basis for exclusion from the law.
Thus, the court turns to an examination of the vehicle’s defects and the law itself. First, the shift indicator which the defendant replaced is part of the transmission and, therefore, covered. Interestingly, there is no mention of the fuel tank in item 4 of the Bill of Rights (General Business Law § 198-b [f] [1] [4]) and it would not be covered by the Lemon Law; however, that point is moot since the defendant replaced it without charge. The court also finds that the muffler (P6) is not covered. *83 Section 198-b (b) (2) (a) specifically delineates covered engine parts and does not include mufflers or converters. Similarly, the shocks and tires (Pll) are not covered. Although they might be seen as part of the drive axle as they are connected to it, section 198-b (b) (2) (c) again specifically enumerates which axle parts are covered and tires and shocks are not among them. In fact, the specific exclusion of the battery under the statute indicates that the statute was intended not to cover items which normally last only a few years and tires and shocks would be among those. The court also finds that the radio (P12) and the rear defroster (P13) are not covered by the statute and, thus, the ancillary issue of whether they fell within the warranty period time limitation is irrelevant.
This brings the court’s attention to the knotty issue of credibility for the Westend Auto labor receipts (P7) dated September 11 and (P9) dated September 12 and the Tire Warehouse parts receipts (P8) originally dated September 15 and changed in pen to read September 10 as well as (P10) marked “picked up 9/16.” As those parts were required to make the repairs charged for on September 11 and September 12, it is counter-intuitive at best to believe that parts could be purchased and picked up after repairs are made; therefore, the altered dates could not have been correct.
However, arguendo, if the receipts were legitimate, there is still a glaring flaw in the plaintiffs Lemon Law claim. P3, plaintiffs own phone bill submitted as her own proof, shows that the last contact she had with the defendant was September 3, 1997 — long before any of the repairs were done. Clearly, the statute requires at section 198-b (f) (1) (6) that the buyer is “entitled to return the car and receive a refund” (emphasis added) — the plaintiff never did so. Moreover, section 198-b (f) (1) (5) requires that “If the same problem cannot be repaired after three or more attempts, you are entitled to return the car” (emphasis added) — again, in this court’s opinion there is a requirement that the car be returned to the dealer and, furthermore, that the dealer be given at least three attempts at repair for each problem. There was no evidence offered by the plaintiff that either the car was returned after the repairs alleged under P5 through P13, or that the dealer was given three attempts at repair (a prerequisite before refund eligibility). Lastly, at section 198-b (f) (1) (4) the statute requires “the dealer or his agent must repair or, if he so chooses, reimburse you for the reasonable cost of repair.” (Emphasis added.) Clearly, the statute was intended to require return of *84 the vehicle and then repair or refund was the option of the dealer. For all of these reasons, the court finds no merit to the plaintiffs Lemon Law claim and that, in fact, such a finding would violate the defendant’s rights under the law.
The court then must consider the second theory of the plaintiffs case which relies on Uniform Commercial Code § 2-314 which requires “a warranty that the goods shall be merchantable” (UCC 2-314 [1]) and “are of fair average quality.” (UCC 2-314 [2] [b].) In the plaintiffs memorandum she correctly cites that, “The Used Car Lemon Law specifically provides that ‘nothing in this section shall in any way limit the rights or remedies which are otherwise available’ ” and, thus, plaintiff is also entitled to relief under the UCC.
The plaintiffs memorandum cites McCormack v Lynn Imports (114 Misc 2d 905, 910-911) in support of her claim in that it stands for the proposition that in order to fulfill UCC 2-314 a car must “enable the purchaser to transport herself upon the streets and highways of this State or any other in a reasonably safe manner.” Interestingly, the defense memorandum of law also cites this same case. However, they incorrectly claim that the case involved a vehicle which failed inspection. This court’s review of McCormack shows that (at 907) “in fact a mechanic employed by Lynn Imports, Inc., testified that he inspected the car and that it had ‘passed inspection’.” Therefore, this court finds that, based upon the case cited, the seller’s own inspection cannot be relied upon to fulfill the warranty of merchantibility.
The instant matter, however, has a clear differentiating feature from the McCormack case (supra). In this case the car was not only inspected by the seller under New York State regulations, but also taken to a Massachusetts State Inspection Station of the plaintiffs choice where it also passed. This court, in reaching a decision, referred to Massachusetts General Laws Annotated chapter 90, § 7A which requires: “inspection to determine the proper and safe condition of the following: brakes, stop lamps, lights, directional signals, horn, vehicle identification number, steering and suspension systems, glazing, windshield wipers and cleaner, number plates, tires, fenders, bumpers, external sheet metal, reflectors, splash guards, chock blocks, safety belts and exhaust system.” (Emphasis added.)
Therefore, due to the distinguishing features setting this case apart from McCormack (supra), and specifically, that a third-party licensed inspector from the State of Massachusetts *85 found the vehicle to be in safe and proper condition, this court finds that the vehicle in question was “of fair average quality” and did “enable the purchaser to transport herself upon the streets and highways of this State or any other in a reasonably safe manner.” In the interest of doing substantial justice between the parties, this court finds in favor of the defendant, Jeffery Van Deusen, and hereby dismisses the claim of the plaintiff, Gail Raymond.