Kim C. CANNON and Sherrill
S. Cannon, Plaintiffs,

v.

NEWMAR CORPORATION, Wilkins
Recreational Vehicles, Inc., Spartan
Motors, Inc., and Spartan Motors
Chassis, Inc., Defendants.

Newmar Corporation, Third–
Party Plaintiff,

v.

Spartan Motors, Inc. and Spartan
Motors Chassis, Inc., Third
Party Defendants.

No. 02–CV–6041 CJS.

United States District Court,
W.D. New York.

Sept. 9, 2003.

Dennis Hirsch, Sadis & Goldberg, LLC, New York City, for Plaintiffs.

John W. VanDenburgh, Esq., Eugene Daniel Napierski, Esq., Napierski, VanDenburgh & Napierski, LLP, Albany, NY, for Defendant and Third Party Plaintiff Newmar Corporation.

Thomas G. Smith, Esq., Erika N.D. Stanat, Esq., Harter, Secrest and Emery LLP, Rochester, NY, for Defendant Wilkins Recreational Vehicles, Inc.

Sunny M. Sparano, Esq., Thomas C. Blauvelt, Esq., Thomas Carroll Blauvelt, LLC, New York City, for Defendants and Third Party Defendants Spartan Motors, Inc. and Spartan Motors Chassis, Inc.

## DECISION and ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

Plaintiffs Kim C. Cannon and Sherrill S. Cannon, residents of the Commonwealth of

Pennsylvania, filed a complaint alleging causes of action under federal and New York State law for breach of express and implied warranties arising out of their purchase of a 2000 Dutch Star recreational vehicle. Now before the Court is plaintiffs' motion (# 37) for summary judgment on Count V of the amended complaint; plaintiffs' motion to sever and bifurcate all remaining claims and causes of action (# 37); defendant Wilkins Recreational Vehicles, Inc.'s ("Wilkins") cross-motion (# 40) for summary judgment; and defendant Newmar Corporation's ("Newmar") cross-motion (# 44) for summary judgment. For the reasons set forth below, the Court grants plaintiffs' application and denies defendants Wilkins' and Newmar's motions.

## BACKGROUND

Both defendants and plaintiff agree on the following facts. On June 17, 2000, plaintiffs purchased a 2000 Dutch Star motor home, vehicle identification number 4VZBN2296YC035023 ("Dutch Star") from defendant Wilkins for $176,972. The Dutch Star had been manufactured by defendant Newmar. Defendant Spartan Motors, Inc. and Spartan Motor Chassis, Inc. ("Spartan") manufactured some of the Dutch Star's components. Both Wilkins and Newmar provided plaintiffs with several written warranties, including, *inter alia*, a three-year or thirty-six thousand mile manufacturer's warranty, and the warranty provided for under New York General Business Law § 198–a. Defendant Spartan also warranted some of the Dutch Star's components.

The Dutch Star was delivered to plaintiffs on June 22, 2000. Plaintiffs allege that since that time, the Dutch Star has had certain defects, and further that de-

fendants have ineffectively repaired the defects. More specifically: On June 22, 2000, while driving the Dutch Star from Wilkins to their residence, plaintiffs experienced mechanical problems which caused the Dutch Star's motor to cease running. The Dutch Star was towed to a Cummins Engine facility the next day where it remained for repairs until being returned to plaintiffs on June 30, 2000 [1]. The cause of the mechanical problems was determined to have been gasoline in the diesel engine. Approximately one month later, on July 20, 2000, while driving during a rainstorm, the driver's side windshield wiper failed, which caused the Dutch Star to be out of service the following day for necessary repairs. Then on July 28, 2000, plaintiff discovered that the Dutch Star was leaking fuel while traveling to Wilkins to have other minor repairs completed. The cause, a leak in the fuel block, resulted in plaintiffs' Dutch Star being out of service for repairs until August 8, 2000. Then, on December 25, 2000, the power steering system failed, and the Dutch Star had to be towed to a repair center, where it remained until it was returned to plaintiffs on January 13, 2001. However, as a result of a recall that was issued with respect to the power steering system, the Dutch Star had to be returned to a Cummins facility on May 22, 2001 for additional repairs for two days. On July 22, 2001, plaintiffs' Dutch Star suffered another engine malfunction which rendered the vehicle incapable of traveling at speeds in excess of forty to forty-five miles per hour. As a result of this malfunction, plaintiffs delivered the Dutch Star to Cummins for repairs on July 25, 2001, and it was returned to plaintiffs on July 31, 2001.

As a result of the aforementioned defects, plaintiffs maintain that the Dutch

---

1. Cummins is the manufacturer and warrantor of the engine, transmission and certain other mechanical parts and systems. It is not a party to this lawsuit.

Star may not be used for personal, family and household uses. Plaintiffs claim that defendants have failed to fix or replace the Dutch Star as the warranties provide. Further, they contend that there was no way for them reasonably to discover the defects prior to delivery and that the Dutch Star is in substantially the same condition it was upon arrival. Therefore, plaintiffs sent Newmar, via certified mail, return receipt requested, a letter dated July 25, 2001, which stated that "[i]n response to the New York General Business Law Section 198–a (Lemon law) agreement we signed when we purchased our 2000 Dutch Star..., we are hereby notifying you than [sic] our motor home has been subject to repair three times and out of service for 21 days and we are now considering our options at this point." Sherrill Cannon aff., Ex. K. Plaintiffs sent a second letter dated July 26, 2001, stating "[s]ince we are no longer interested in any motorhome [sic], we hope Newmar can help us without having to invoke any Lemon Law legal procedures." Sherrill Cannon Aff., Ex. L.

On October 5, 2001, plaintiffs filed a complaint in the United States District Court for the Southern District of New York for breach of express and implied warranties arising out of their motor home purchase. Specifically, plaintiffs' complaint alleges five causes of action, denoted as Counts I—V, as follows:

Count I: Breach of written warranty against Newmar and Spartan pursuant to Magnuson–Moss Warranty Act;

Count II: Breach of implied warranty against Newmar, Spartan and Wilkins pursuant to Magnuson–Moss Warranty Act, including implied warranties of merchantability pursuant to New York UCC §§ 2–314, 2–318 and 15 U.S.C. § 2308;

Count III: Revocation of acceptance against Newmar, Spartan and Wilkins pursuant to Section 2310(d) of the Magnuson–Moss Warranty Act;

Count IV: Award of costs, fees and expenses pursuant to 15 U.S.C. § 2310(d)(2) against Newmar, Spartan and Wilkins; and

Count V: Violation of New York General Business Law § 198–a against Newmar and Spartan

Because the Southern District determined that venue was not appropriate in that court, it transferred the case to this Court pursuant to 28 U.S.C. § 1406(a). *Cannon v. Newmar Corp.*, 210 F.Supp.2d 461 (S.D.N.Y.2002) ("venue will be transferred to the Western District of New York, where venue is appropriate because that is where a substantial part of the events took place").

On June 12, 2003, plaintiffs filed one of the three motions in this case now pending before the Court for summary judgment. In their application, plaintiffs contend that they are entitled to summary judgment on Count V of the amended complaint, the New York General Business Law § 198–a ("Lemon Law") claim. Specifically, plaintiffs assert that "the repair attempts, which have resulted in the Dutch Star being out of service for more than seventy (70) days in total, give rise to a presumption that Newmar has breached the Lemon Law." Pls.' Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 3. Plaintiffs further contend that because Newmar cannot demonstrate either of the two statutorily-identified affirmative defenses, plaintiffs have established a *prima facie* case under the Lemon Law.

On June 13, 2003, Wilkins filed a motion for summary judgment. In its application, Wilkins contends it is entitled to dismissal of plaintiffs' claims for breach of implied warranty (Count II), revocation of accep-

tance (Count III), and attorney's fees and costs (Count IV) to the extent that they pertain to Wilkins. Specifically, Wilkins alleges that the "undisputed facts demonstrate that 1) the [recreational vehicle] is fit for its ordinary purpose; 2) Wilkins has timely and competently repaired the defects complained of in the vehicle; 3) the [plaintiffs] did not effectively revoke their acceptance of the vehicle in accordance with the provisions of UCC § 2–608; and 4) the [plaintiffs] are not entitled to recover their attorneys' [sic] fees and costs associated with this action from Wilkins." Def. Wilkins Mem. of Law at 2.

On June 13, 2003, Newmar filed the third pending motion. In its application, Newmar contends that it is entitled to summary judgment dismissing plaintiffs' claims against them founded upon the express warranty issued by Newmar (Count I), as well as Lemon Law claim (Count V). Specifically, Newmar alleges that "all [plaintiffs'] complaints [regarding the motor home were] covered by the warranty, were completed without charge and the value of the vehicle has not been substantially impaired." Def. Newmar Mem. of Law at 2.

## STANDARDS OF LAW

### A. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is 'material' only if the fact has some affect on the outcome of the suit." *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a " 'metaphysical doubt' concerning the facts." *Bryant v. Maffucci,* 923 F.2d 979,

982 (2d Cir.1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e).

## B. New York Lemon Law

In 1983, New York enacted General Business Law § 198–a, which quickly became known as the "New Car Lemon Law." As noted by the New York Court of Appeals, the law was enacted in order "to provide New York consumers greater protection than that afforded by automobile manufacturers' express limited warranties or the federal Magnuson–Moss Warranty Act [15 U.S.C. § 2301 et seq.]." *Motor Vehicle Manufacturers Association of the United States v. State,* 75 N.Y.2d 175, 179, 551 N.Y.S.2d 470, 550 N.E.2d 919 (1990). The statute provides in pertinent part that,

> [i]f, within [the earlier of 18,000 miles or two years] …, the manufacturer of a motor home or its agents or its authorized dealers or repair shops … are unable to repair or correct any defect or condition that substantially impairs the value of the motor home to the consumer after a reasonable number of attempts, the motor home manufacturer, at the option of the consumer, shall … accept return of the motor home from the consumer and refund to the consumer the full purchase price. . . .

N.Y. GEN. BUS. LAW § 198–a(n)(4) (McKinney 2003). The statute presumes that a "reasonable number of attempts" have been made to repair a vehicle if, within two years or 18,000 miles of purchase, the vehicle requires four trips to the repair shop for the defect or condition, or is out of service "by reason of repair of one or more nonconformities, defects or conditions for a commutative total of thirty or more calendar days. . . ." N.Y. GEN. BUS. LAW § 198–a(d) (McKinney 2003). The court may award a prevailing plaintiff reasonable attorney's fees. N.Y. GEN. BUS. LAW § 198–a(I) (McKinney 2003).

New York's Lemon Law statute makes it an affirmative defense that (i) the nonconformity, defect or condition does not substantially impair the value of the motor home, or (ii) was the result of abuse, neglect or unauthorized modifications or alterations. N.Y. GEN. BUS. LAW § 198–a(c)(3)(i).

## C. Breach of Implied Warranty

The Magnuson–Moss Warranty Act ("Magnuson–Moss") provides a private right of action by a consumer purchaser of a consumer product against a manufacturer or retailer who, *inter alia,* fails to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1) (2003). However, the Act did not create any new implied warranties for sales of goods. When referring to an *implied warranty,* the Act means "an implied warranty arising under State law … in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (2003). In New York, the relevant implied warranty of merchantability is governed by the Uniform Commercial Code ("UCC"). N.Y. U.C.C. § 2–314 (McKinney 2003). UCC § 2–314(1) provides in pertinent part that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2–314(1) (McKinney 2003). Further, the UCC provides that to be merchantable, the goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods. N.Y.U.C.C. § 2–314(2)(c) (McKinney 2003).

## D. Revocation of Acceptance

Pursuant to UCC § 2–608, a purchaser may revoke his acceptance of goods "whose non-conformity substantially impairs value to him." N.Y. U.C.C. § 2–608 (McKinney 2003). However, the purchaser must establish that he accepted the goods (1) with the reasonable assumption that the non-conformity would be cured and it was not seasonably cured; or (2) without knowing of the non-conformity if the acceptance was induced by difficulty of discovery or by the assurances of the seller. N.Y. U.C.C. § 2–608(1) (McKinney 2003). Moreover, the purchaser's revocation of acceptance is not final until he notifies the seller and such "revocation must occur within a reasonable time after the [purchaser] discovers or should have discovered the ground for it and before any substantial changes in condition of the goods which is not caused by their own defects." N.Y. U.C.C. § 2–608(2) (McKinney 2003).

## E. Attorney's Fees

Under Magnuson–Moss, attorney's fees do not become an issue until plaintiff prevails. The pertinent section of Magnuson–Moss states as follows:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court, in its discretion, shall

determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2).

## ANALYSIS

### A. Plaintiffs' Motion for Partial Summary Judgement Against Newmar, Plaintiffs' Motion to Bifurcate and Newmar's Cross-motion for Summary Judgment Against Plaintiffs

#### 1. *Plaintiffs' Motion to Bifurcate*

Plaintiffs seek partial summary judgment against Newmar[2] on their Fifth cause of action, a claim under the New York Lemon Law, N.Y. GEN. BUS. LAW § 198–a, and also seek to sever and bifurcate all remaining claims and causes of action pursuant to Federal Rule of Civil Procedure 56(d).

Plaintiffs claim that they have provided evidentiary proof in admissible form to justify a judgment under the New York Lemon Law against Newmar and that Newmar has failed to submit evidentiary proof in admissible form to raise an issue about a material fact. Plaintiffs' proof shows that within the earlier of 18,000 miles or two years, Newmar, or its agents or authorized dealers or repair shops to which plaintiffs were referred, was unable to repair or correct several defects which substantially impaired the value of the Dutch Star to plaintiffs, that, consequently, and the Dutch Star was out of service at least a cumulative thirty days for repairs.

In its memorandum opposing plaintiffs' motion for partial summary judgment, Newmar argues that plaintiffs cannot establish the requisite out-of-service-days

---

**2.** The Notice of Motion refers to Count V of the Amended Complaint, which includes as parties both Newmar and Spartan; Spartan, however, has settled with plaintiff; thus, the motion is only against Newmar. At oral argument, however, Newmar refused to release Spartan, thus, Spartan remains a party.

following plaintiffs' notice to the manufacturer, as required by § 198–a(n)(6). In this record, plaintiffs concede they did not notify the manufacturer pursuant to the statutory requirement until July 25, 2001. Sherrill Cannon aff. ¶ 17 & Ex. K. Thus, pursuant to § 198–a(n)(6), as of July 25, 2001, Newmar argues that only 21 days out of service apply to satisfy the cumulative 30–day requirement. The Court agrees with Newmar that the statute effectively requires plaintiffs to show that they incurred at least an additional nine days of post-notice out of service time in order to obtain a remedy under the statute; however, the Court finds that they have done so.

■ Plaintiffs have established by competent evidentiary proof in admissible form that following July 25, 2001, the Dutch Star was out of service for repairs for at least an additional nine days prior to the expiration of the warranty period. Ms. Cannon's affidavit shows that following the July 25, 2001 letter, the Dutch Star was returned for repairs on July 26, 2001, for engine failure, and was out of service until July 31, 2001. Sherrill Cannon aff. ¶ 17 & Ex. J. The invoice from that repair reveals that an extensive number of parts were replaced and over sixteen hours of labor expended. On November 5, 2001, plaintiffs brought the Dutch Star to a Spartan repair facility for a problem with the air suspension which they had complained about to Cummins when the Dutch Star was there in July, but which Cummins had not been able to verify. The Dutch Star remained at the Spartan repair facility until November 16, 2001. Sherrill Cannon aff. ¶ 23–26. The Spartan repair facility replaced leaking brass fittings in the dump valves, which took over five hours of labor. Sherrill Cannon aff. ¶ 26 & Ex. O. Plaintiffs claim that despite the Spartan repair facility's work, the problem of losing air continued and at the end of a

twenty-four hour period of inoperativeness, the Dutch Star would loose enough air in its suspension system to cause the motor home to rest directly on its tires, preventing any forward movement until the air was replaced. On May 21, 2002, the Dutch Star was again out of service for an additional two days for motor service. The two-year warranty period did not expire until June 22, 2002.

Newmar contends that the November 5, 2001, repair was unnecessary and, in any event, did not fix the perceived problem. In support of its contention, Newmar relies on an affidavit by its expert witness, and on hearsay information. The affidavit by Ken Miller, a technician in the Service Department of Newmar, states that the vehicle, when inspected by him on March 12, 2003, was operating properly. Specifically, with respect to the non-residential portions of the Dutch Star, he relates that the steering, engine, transmission, cruise control and windshield wipers were all operating properly. Miller aff. ¶ 3. His affidavit, however, mentions nothing about the air suspension system, which was the problem for which plaintiffs sought repair on November 5 and which kept the Dutch Star out of service for eleven days. With regard to the hearsay evidence, as the Court pointed out at oral argument, Mr. Cannon's deposition testimony, that he spoke with a service technician who told Mr. Cannon that he, the service technician, was informed by a representative at Spartan that the deflation was normal, is nothing but self-serving double hearsay, and certainly insufficient evidence to defeat a summary judgment motion. Therefore, the Court finds that plaintiffs are entitled to summary judgment under the New York Lemon Law.

Turning to plaintiffs' motion to sever and bifurcate [3] all remaining claims, New-

---

**3.** Wilkins has not filed a response to plaintiffs' motion (# 37).

mar has not raised any objection. The Court will, therefore, grant plaintiffs' application.

### 2. *Newmar's Motion*

Newmar seeks dismissal of the cause of action pertaining to their specific written warranty and dismissal of plaintiffs' Lemon Law claim. Plaintiffs consent to dismissal of Count I of their Amended Complaint without costs, therefore, Count I is dismissed. To the extent Newmar's motion seeks summary judgment on Count V, that motion is necessarily denied, for the reasons discussed above.

### B. Wilkins' Motion for Summary Judgment on the Second, Third and Fourth Causes of Action

Wilkins contends that no material question of fact precludes summary judgment on its motion for judgment on Count II, breach of implied warranty of merchantability under New York Uniform Commercial Code Sections 2–314 and 2–318 and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2308, or Count III, revocation of acceptance. Plaintiffs contend there are material issues of fact.

In support of its position, Wilkins relies primarily on *Fillet v. Curry,* 12 A.D.2d 519, 207 N.Y.S.2d 522 (N.Y.App.Div.1960) and *Raymond v. Van Deusen,* 183 Misc.2d 81, 85, 702 N.Y.S.2d 491 (1998). In *Fillet,* the Second Department found that the plaintiff's proof of difficulties starting his car were insufficient to show breach of a warranty of merchantability. In *Raymond,* the Town Justice wrote, "this court finds that the vehicle in question was 'of fair average quality' and did 'enable the purchaser to transport herself upon the streets and highways of this State or any other in a reasonably safe manner.'" *Raymond,* 183 Misc.2d at 85, 702 N.Y.S.2d 491. This Court does not find either case

persuasively shows that the issue of merchantability is a question of law to be determined at the summary judgment stage.

With regard to the revocation cause of action, Wilkins argues that since plaintiffs did not revoke acceptance of the Dutch Star in accordance with the requirements of New York Uniform Commercial Code § 2–608, and since the value of the Dutch Star has not been substantially impaired within the meaning of New York Uniform Commercial Code § 2–608(1), they are entitled to summary judgment on that count as well.

The Court finds that material issues of fact preclude judgment on both Count II and Count III. The evidentiary proof in admissible form before the Court raises an issue of fact as to whether or not the Dutch Star was fit for the purpose intended. On one hand, plaintiffs have not come forward with proof that the Dutch Star "died shortly before we reached our home" on the very day they took delivery, Sherrill Cannon aff. ¶ 10, and that the Dutch Star suffered a debilitating loss of its engine, leaked diesel fuel, and in other ways became inoperable. On the other hand, as Wilkins points out, plaintiffs have continued to use the Dutch Star, putting approximately 9,000 additional miles on it since revoking acceptance on July 26, 2001. The Court find that resolution by a trier of fact is required under Counts II and III.

### C. Attorney's Fees

Wilkins asserts that, since it is entitled to summary judgment on the second and third counts, plaintiffs cannot recover costs or fees. However, since the Court denied Wilkins' summary judgment on Counts II and III, the issue of fees, costs and expenses cannot be determined at this time. As to Newmar, plaintiffs are entitled to attorney's fees since the Court granted

summary judgment to the plaintiffs on the Lemon Law claim. Plaintiff must file, by the close of business on September 26, 2003, an affidavit and other proof of fees. Newmar may file, by the close of business on October 3, 2003, opposing papers and the Court will decide the issue on papers, unless it determines a need for oral argument, in which case the Court will set a date for such argument.

### CONCLUSION

For the above stated reasons, plaintiffs' motion (# 37) for summary judgment on Count V is granted and judgment may be entered against Newmar. Newmar's motion (# 44) for summary judgment is granted as to dismissal of Count I, and Count I is dismissed, but it is denied with respect to Count V. Wilkins' motion (# 40) for summary judgment is denied. In view of the Court's granting of plaintiffs' motion, the Clerk is directed to enter judgment for plaintiff on Count V against Newmar, only, and that Count is severed from the remaining counts, II, III and IV. Plaintiff is awarded attorney's fees under the New York Lemon Law and, as stated above, must file proof of the same by the close of business on September 26, 2003. Newmar may file, by the close of business on October 3, 2003, opposing papers and the Court will decide the issue on papers, unless the Court determines a need for oral argument, in which case the Court will set a date for argument.

IT IS SO ORDERED.